1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9 JULI ADAMS,

10                                    Plaintiff,          No.  2:14-cv-1174

11          v.                                            COMPLAINT

12 THE HARTZ MOUNTAIN CORPORATION,                        **JURY TRIAL DEMANDED**

13                                    Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
Case No. 2:14-cv-1174
005029-11  703929 V1


HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   PARTIES ...............................................................................................2

III.  JURISDICTION, VENUE, AND GOVERNING LAW ......................................3

IV.   FACTUAL BACKGROUND .....................................................................3

      A.   Plaintiff Adams Designs Angry Birds for Hartz...........................3

      B.   Plaintiff Adams Enters Into an Exclusive License Agreement
           with Hartz for "Angry Birds" ......................................................4

      C.   Rovio Launches the "Angry Birds" Video Game in 2009...............9

V.    COUNTS................................................................................................12

      COUNT I:  BREACH OF CONTRACT ........................................................12

      COUNT II:  BREACH OF CONTRACT – IMPLIED COVENANT OF
      GOOD FAITH AND FAIR DEALING...........................................................13

      COUNT III:  UNJUST ENRICHMENT.........................................................15

      COUNT IV:  CONVERSION......................................................................16

      COUNT V:  FEDERAL DECLARATORY JUDGMENT ACT,
      28 U.S.C. § 2201, *et seq.*......................................................................16

      COUNT VI:  FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125
      (Federally Registered Trademark Claim) ..................................................17

      COUNT VII:  FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125
      (Common Law Trademark Claim)..............................................................19

      COUNT VIII:  ACCOUNTING ...................................................................20

JURY TRIAL DEMAND ................................................................................20

COMPLAINT - i
Case No. 2:14-cv-1174

005029-11  703929 V1



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

# I.    INTRODUCTION

1.    An artist owns the original work that she creates and has the exclusive right to determine how and when such work will be used in the marketplace. A corporation that contracts with an artist to use her work in the marketplace must treat the artist fairly and comply in good faith with the terms of its agreements and it must not make lucrative side deals that cut-out the artist for its own benefit. Hartz Mountain Corporation ("Hartz") did not comply with these simple rules and instead has unfairly and deceptively garnered millions of dollars in profits from the work of Plaintiff, Juli Adams.

2.    Juli Adams is an accomplished Seattle artist, who was approached in 2006 at an art show by Hartz to create and design a pet toy line. Hartz, at the time, was a struggling pet toy company based in Secaucus, New Jersey that was looking to revitalize its business.

3.    Ms. Adams designed a pet toy line she called "Angry Birds." Plaintiff Adams coined the term "Angry Birds" because her pet toys (which were soft, plush birds) were "angry," being that they were constantly being attacked by the pet owner's cat.

4.    After reviewing Ms. Adams' "Angry Birds" designs, Hartz entered into an exclusive Confidential Licensing Agreement ("Agreement") with Ms. Adams in November 2006, with a defined term of five years. *See* Licensing Agreement attached as Exhibit A.

5.    Importantly, the Agreement specifically stated that there was to be "***no transfer of ownership***" of the "Angry Birds" Intellectual Property from Juli Adams to Hartz. The Agreement gave Hartz only limited licensing rights, which included Hartz's obligation to obtain trademark protections for Plaintiff Adams' Intellectual Property. Importantly, the limited licensing rights provided to Hartz under the Agreement did not give Hartz the right to license Ms. Adams' Intellectual Property to third parties for its own profit, while cutting out Ms. Adams.

6.    At some point between December 2009 (after the launch of the wildly successful "Angry Birds" video game) and November 2011, even though it did not have the legal right to do so, Hartz used Ms. Adams' Intellectual Property and the "Angry Birds" trademark that Juli Adams created to leverage an exclusive deal with the "Angry Birds" video game creator, Rovio Entertainment, Ltd. ("Rovio"). Hartz did so without Ms. Adams' knowledge or permission,



without legal authority, and without actual ownership of Ms. Adams' Intellectual Property or the "Angry Birds" trademark.

7.     Once Hartz made its exclusive deal with Rovio for the marketing and sale of "Angry Bird" pet toys tied to Rovio's blockbuster video game, Hartz dumped Ms. Adams, and her "Angry Birds" pet toy line, even while the Adams Agreement remained in place.

8.     For its part, Rovio seemingly failed to perform even minimal due diligence on the source of Hartz's registration of the Angry Birds trademark for pet products and its ownership. Indeed, the packaging of the Juli Adams "Angry Birds" pet toys made clear that Juli Adams was the artist and creator of the mark (*see infra*, ¶ 31). Even a cursory look at the "Angry Birds" pet toys on the market beginning in 2007 would have, and should have, put Rovio on notice that Hartz was not the sole and exclusive owner of the Angry Birds mark for use with pet toys. On information and belief, with no effort to ascertain the true ownership of the Angry Birds mark for the sale of pet products in the United States, Rovio exclusively licensed the sale of pet products in the U.S. tied to its video game to Hartz.

9.     Hartz has improperly reaped millions of dollars in profits from the Intellectual Property of Juli Adams. Through this action, Ms. Adams seeks disgorgement of all of Hartz's ill-gotten gains, a reasonable royalty as owed to her under the Agreement, and an accounting, as well as a return of her Intellectual Property, including all associated trademarks and copyright registrations for "Angry Birds" pet toys.

## II.     PARTIES

10.     Plaintiff, Juli Adams, is a contemporary painter who resides in Seattle, Washington. Ms. Adams has presented her art at art fairs and galleries across the United States.

11.     Defendant, Hartz Mountain Corporation, is headquartered at 400 Plaza Drive, Secaucus, New Jersey 07094-3688. Hartz is one of the largest pet products companies in the United States. It employs over 1,000 people in development, manufacture, distribution, and sale of over 1,500 different pet products through some of the largest retailers in the United States.

HB   HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

### III.    JURISDICTION, VENUE, AND GOVERNING LAW

12.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states (Washington/New Jersey) and there is alleged to be more than $75,000 in controversy.

13.    This Court also has original jurisdiction under 15 U.S.C. § 1121 as claims in this action arise under Title 15, Chapter 22.

14.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because Ms. Adams resides in this judicial district, and a substantial part of the events giving rise to Ms. Adams' claims occurred in this judicial district, and has caused her damage in this district.

15.    Personal jurisdiction exists over Defendant Hartz because it contracted with a citizen of this state and therefore could expect to be hauled to Court in this district. Moreover, Defendant Hartz sells its pet products in this district and therefore the Court's assertion of jurisdiction over Defendant does not offend traditional notions of fair play and due process.

16.    The "Governing Law" provision in the Agreement between Hartz and Ms. Adams states that all disputes related to the Agreement shall be governed and construed in accordance with the internal laws of the State of New Jersey, excluding the body of law related to conflicts of laws.

### IV.    FACTUAL BACKGROUND

**A.    Plaintiff Adams Designs Angry Birds for Hartz**

17.    In the summer of 2006, Juli Adams exhibited her original art work at a festival in Montana. Her art consisted, at least in part, of drawings of cartoon animals.

18.    Tim Ford, at the time Director of Marketing for Hartz's accessory division, was attending the Montana festival while on vacation with his wife. Mr. Ford noticed Ms. Adams' art work and, after a pleasant exchange, Mr. Ford asked Ms. Adams if she would be interested in designing a line of pet toys for Hartz.

19.    Over the next several months, Mr. Ford and Ms. Adams regularly corresponded via email and telephone, and Ms. Adams penciled a number of design drawings of various "angry" animals, including birds, bears, gophers, and rabbits.

COMPLAINT - 3
Case No. 2:14-cv-1174
005029-11  703929 V1



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

20.     After the drawings were finalized, Mr. Ford, through Hartz, had several mock-ups prepared of the toys. Hartz flew Ms. Adams to New Jersey to review and discuss her pet toy line.

21.     Once the designs were settled, Hartz negotiated the Agreement with Ms. Adams, through its corporate general counsel and secretary, Max C. Marx, Esquire. Ms. Adams was not represented by an attorney.

**B.      Plaintiff Adams Enters Into an Exclusive License Agreement with Hartz for "Angry Birds"**

22.     On November 20, 2006, Ms. Adams executed a "Confidential Exclusive License Agreement," with an initial term of five years. The Agreement's term began after the "first sale of each Licensed Product." Licensed Products are defined to include "all products and services regardless of class or kind related to the Hartz business from time to time but including without limitation the products set forth on <u>Exhibit A</u>[1] attached [to the Agreement] and made an integral part hereof."

23.     The five-year term was subject to two conditions that could alter its duration: (1) if the license for the Licensed Product is extended by an amendment to the Agreement, or (2) if the Intellectual Property related to the Licensed Product is purchased by Hartz pursuant to the terms and conditions of the Agreement. Neither of these events occurred during the five-year term.

24.     On information and belief based on the date of Ms. Adam's first royalty payment from Hartz under the Agreement, the first sale of any Licensed Product was no earlier than March 2007, meaning the Agreement's term was through at least March 2012, if not even later due to the initial sale of other Licensed Products having occurred even later than March 2007.

25.     At the end of the five-year term, the Agreement requires that if the parties desired to extend, the parties were to enter into an amendment to the Agreement providing for an extension; otherwise the Agreement would end and the Intellectual Property, ***and all associated rights***, would revert to Juli Adams.

---

[1] There is ***no*** Exhibit A attached to the executed Agreement.

COMPLAINT - 4
Case No. 2:14-cv-1174
005029-11 703929 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

26.     Pursuant to the Agreement, Ms. Adams "license[ed] to Hartz on an exclusive basis the Intellectual Property" in exchange for a royalty payment based on quarterly net sales of the toys. The scope of the license is defined as follows:

> "Intellectual Property" shall mean all intellectual property of Juli Adams licensed under this Agreement including (a) the intellectual property attached hereto as *Appendix B* and (b) such future intellectual property of Juli Adams as Hartz shall request from time to time, which additional intellectual property shall be added to this Agreement upon notice by Hartz to Juli Adams and pursuant to an amendment to this Agreement, which amendment shall have the same terms and conditions as set forth in this Agreement unless the parties otherwise agree in such amendment.

27.     Appendix B of the Agreement contains numerous drawings from the angry pet line, including the Angry Birds: "Angry Parrot," "Angry Rooster," "Angry Hummer," and "Angry Robin."

28.     Importantly, the Agreement *did not grant* Hartz ownership of Juli Adams' Intellectual Property, including the "Angry Birds." Specifically, the Agreement expressly states that "[e]ach party acknowledges that *no transfer of ownership of* [sic] *or a license to any intellectual property is contemplated by this Agreement*, except as expressly provided here in … Hartz shall have the right to file copyright and other intellectual property right filings, in its discretion, for all Licensed Products."

29.     Although Hartz had no ownership interest, the Agreement assigned Hartz the "key responsibilit[y]" to "renew and protect any filings for the Intellectual Property as it relates to the Licensed Products and pursue any claims of infringement or other claims relating to the Intellectual Property as it relates to the Licensed Products sold by Hartz pursuant to the license granted under [the] Agreement."

30.     The Agreement also gave Hartz "a right of first purchase and a right of first refusal" of Juli Adams' Intellectual Property. In order to exercise the option, the Agreement requires Hartz to "notify Juli Adams of its election to purchase the Intellectual Property." After notification, Hartz and Plaintiff Adams were required to "negotiate the terms and conditions of sale and purchase of the Intellectual Property, including the purchase price." Hartz never sought to purchase the Intellectual Property from Juli Adams.



31.     After the Agreement was executed in 2006, and using Juli Adams' Intellectual Property, Hartz launched the "Hartz® Angry Birds™" pet toys. Juli Adams' Angry Hummingbird is photographed below in its Hartz packaging.



32.     The reverse side of the packaging (below) for the "Angry Birds" toys included a paragraph describing the art work of Juli Adams, made specific reference to Juli Adams' website (www.juliadams.com), and noted that the toys were "[l]icensed from the art of Juli Adams."

Hartz® Angry Birds™ are angry because you are buying them as playthings for your cats. But don't feel bad. These birds were bred to be confrontational.

Supervise your pet. For play only. Not a child's toy. Toy should be removed and replaced if excessive wear or damage occurs.

Juli Adams is a contemporary painter, based in Seattle, Washington, whose creative creatures have been brought to life in the new Hartz® Juli Adams' line of dog and cat products. Juli has been presenting her art at high-end, invitation only, fine art fairs and galleries across the United States. You will find her works in homes and offices of all types and with collectors of all ages.

Hartz® Angry Birds™ sont en rogne parce que vous les achetez comme jouets pour vos chats. Mais ne vous culpabilisez pas. Ces oiseaux ont été élevés pour être combattifs.

Surveillez votre animal. Pour jouer seulement. Ce n'est pas un jouet pour enfants. Le jouet doit être retiré et remplacé s'il est très usé ou endommagé.

Juli Adams est une artiste-peintre contemporaine établie à Seattle dans l'État de Washington, dont les créatures fantaisistes prennent vie dans la nouvelle gamme de produits pour chiens et chats Juli Adams de Hartz®. Juli présente ses œuvres lors d'expositions privées dans des galeries et salons d'arts huppés à travers les États-Unis. Ses œuvres se trouvent dans des résidences et bureaux de tout type et les collectionneurs proviennent de toutes les tranches d'âge.

www.julidams.com

www.hartz.com

Licensed from the art of Juli Adams.
Œuvres de Juli Adams sous licence – www.juliadams.com.
Visit hartz.com for more information.
Visitez hartz.com. pour plus d'information.

Made in China for/ Fabriqué en Chine pour ©The Hartz Mountain Corporation, Secaucus, N.J. 07094, USA. Imported by/Importé par Hartz Canada, Inc., St. Thomas, Ontario N5P 3W7, Canada Hartz® is a registered trademark of/Hartz® est une marque déposée registre de/The Hartz Mountain Corporation.        503714

0  32700 10673  7

33.     To protect Juli Adams' Intellectual Property, and pursuant to the terms of the Agreement and its "key responsibilities," Hartz filed a U.S. federal trademark registration for "Angry Birds" on March 28, 2007 (trademark registration number 3473227). The trademark was filed under the category of "Toys and Sporting Goods," with a specific description of "pet toys." As a result of this filing, no entity other than Hartz (under license from Juli Adams) was legally permitted to sell pet toys under the name "Angry Birds" in the United States.

34.     On May 22, 2007, less than a year after the Agreement was executed, Hartz sent Ms. Adams "Amendment Number One" to the Agreement, which she signed as instructed, but

COMPLAINT - 7
Case No. 2:14-cv-1174
005029-11  703929 V1



for which she received **no** new or additional consideration. *See* May 22, 2007, Amendment One, attached as Exhibit B.

35.     Amendment Number One claims that for "good and valuable consideration" Hartz acquired "the right to file copyright, trademark and other intellectual property right filings in Hartz's name, in its discretion, for all of the Licensed Products." Additionally, it gave Hartz "the right to obtain the trademark 'The Juli Adams Collection' in Hartz's name and use it for Hartz's products."

36.     But despite the contrary claim in Amendment Number One, because there actually was no "good and valuable consideration" whatsoever provided to Ms. Adams, Amendment Number One is and was ineffective and of no force or effect.

37.     Despite Amendment One, Juli Adams remained the sole owner of the Angry Birds Intellectual Property, and her consent and authorization was necessary for any use of the intellectually property, including the trademark "Angry Birds."

38.     As detailed by the chart below, and purportedly pursuant to the original terms of the Agreement, Ms. Adams received the following royalties from Hartz for its use of her Angry Birds Intellectual Property:

### Royalties Received By Juli Adams From Hartz

| Date/ Quarter Ending | Check Amount | Royalty Rate | 1099-MISC |
|---|---|---|---|
| | | | |
| June 2007 | $1,165.97 | 2.5% | |
| September 2007 | $1,548.94 | 2.5% | |
| **2007** | | | **$2,714.91** |
| December 2007 | $1,383.33 | 2.5% | |
| | | | |
| March 2008 | $1,356.39 | 2.5% | |
| June 2008 | $1,019.07 | 2.5% | |
| September 2008 | $1,038.68 | 2.5% | |
| **2008** | | | **$4,797.47** |
| December 2008 | $1,727.42 | 2.5% | |
| | | | |
| March 2009 | $602.02 | 2.5% | |
| June 2009 | $106.93 | 2.5% | |
| September 2009 | $0.05 | 2.5% | |
| September 2009 | $267.60 | 3.5% | |



HAGENS BERMAN

1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

| Date/ Quarter Ending | Check Amount | Royalty Rate | 1099-MISC |
|---|---|---|---|
| **2009** | | | **$2,704.02** |
| December 2009 | $683.74 | 3.5% | |
| | | | |
| March 2010 | $19.77 | 3.5% | |
| June 2010 | $192.91 | 3.5% | |
| September 2010 | $75.11 | 3.5% | |
| **2010** | | | **$971.53** |
| December 2010 | -- | | |
| | | | |
| March 2011 | -- | | |
| June 2011 | -- | | |
| September 2011 | -- | | |
| December 2011 | $40.66 | 3.5% | |
| **2011** | | | **$40.66** |
| **Total** | **$11,228.59** | | **$11,228.59** |

## C.    Rovio Launches the "Angry Birds" Video Game in 2009

39.    While Juli Adams' Agreement was in place with Hartz, in December 2009, Rovio released the video game "Angry Birds."

40.    As has been well documented, the Angry Birds video game became an international sensation and went on to be downloaded over one billion times on a variety of game platforms.

41.    In conjunction with the video game's international success, Rovio began an extensive world-wide licensing program for merchandise featuring the Angry Birds from the video game, with the most popular items being t-shirts, plush toys, and cell phone accessories.

42.    Rovio owns the U.S. Trademark Registration No. 3,976,576 for Angry Birds for a wide variety of goods in Classes 9, 16, 28 and 41 and U.S. Trademark 3,988,064 also for goods in Classes 9, 16, 28 and 41.

43.    The Rovio trademarks for "Angry Birds," however, specifically **excludes** toys for pets because that trademark is and was registered to Hartz in 2007, pursuant to its Agreement with Juli Adams, and well before the launch of the "Angry Birds" video game in 2009.

44.    Indeed, while Rovio captured almost every market for merchandising and marketing for its Angry Birds game, it could not legally wade into the pet toy arena (a multi-



1   billion dollar market) because Hartz, under license from Juli Adams, had long-before registered

2   that mark for use in the sale of pet toys. Simply put, Rovio could not sell *any pet toys* without

3   Hartz's cooperation due to the exclusive trademark rights Hartz held by way solely of its

4   Agreement with Juli Adams for her Intellectual Property.

5       45.     While its Agreement with Juli Adams remained in effect, and without actual

6   ownership of the Intellectual Property, Hartz negotiated, and later entered into, an exclusive

7   licensing agreement with Rovio that allowed Hartz to market and sell Rovio's Angry Birds pet

8   toys.

9       46.     Upon information and belief, the licensing agreement between Hartz and

10  Rovio granted Hartz the exclusive rights to sell "Angry Birds" pet toys, in exchange for

11  paying a royalty fee to Rovio on the sales. Due to Hartz's access to Juli Adams Intellectual

12  Property it is believed, and therefore averred, that Hartz did not pay Rovio any upfront

13  licensing fees, which are often required in these transactions.

14      47.     On November 17, 2011, while its Agreement with Ms. Adams remained in effect

15  and without ever notifying Juli Adams, Hartz announced that it was "launching an exclusive line

16  of Angry Birds pet toys featuring many of the wildly popular Angry Birds characters."

17      48.     The terms of the Agreement did not contemplate that Hartz would or could use

18  the trademark created by Juli Adams to sell the Juli Adams line of pet toys for any purpose other

19  than selling the Juli Adams line of pet toys.  Hartz had and has no legal or beneficial right to sell

20  Rovio themed "Angry Birds" pet toys.

21      49.     In its press release, Hartz Senior Director of Marketing stated that the company

22  was "thrilled to work with Rovio, the makers of the popular Angry Birds game, to create an

23  exciting line of [pet] toys." Similarly, Peter Vesterbacka, CMO of Rovio, is quoted as saying that

24  Rovio's "partnership with Hartz will give pets the chance to play [Angry Birds], too."

25      50.     There are obvious similarities between the products and packaging of the Juli

26  Adams "Angry Birds" pet toys and the Rovio-themed "Angry Birds" pet toys.

27      51.     A comparison of a Hartz Rovio-themed pet toy (below left) and a Hartz Juli

28  Adams' pet toy (below right) reveals the toys had nearly identical color and eye shape, and the



font used in the packaging was essentially the same. On information and belief, Hartz simply transitioned its employees that had been working on the design, marketing, and packaging of the Juli Adams pet toys to the same functions with the Rovio-themed pet toys.


**Rovio/Hartz**


**Adams/Hartz**

52.     Despite their public pronouncements, the Hartz/Rovio partnership was one of necessity: Rovio needed the trademark Hartz had registered based upon Juli Adams' original art (which Hartz acquired in 2007 only through its Agreement with Juli Adams) to market and sell the Angry Birds pet toys; otherwise, without Hartz's trademark, Rovio could not enter, and capitalize, on the multi-billion dollar pet market.

53.     In 2012, Hartz's Agreement with Juli Adams expired without Hertz extending the Agreement or purchasing Juli Adams' Intellectual Property.

54.     As a result, Hartz lost then and no longer has the right to utilize Juli Adams' Intellectual Property, including any associated trademarks or copyrights, and they are the exclusive property of Juli Adams.

55.     However, despite having no rights to the "Angry Birds" property, and in breach of the express terms of the Agreement, Hartz again announced in 2012 that through "its continued partnership with PETCO and Rovio Entertainment, creator of the global phenomenon Angry

Birds™" the new line of Halloween-themed Angry Birds plush toys. "All of the fan-favorite Angry Birds™ characters are included in the collection and each 4-inch toy comes equipped with a built-in squeaker."

56.     As of this filing, Hartz continues its partnership with Rovio and continues to sell Rovio-themed Angry Birds pet toys in major retailers like Wal-Mart, PETCO, and online through Amazon.com.

57.     On July 18, 2014, Hartz re-registered Juli Adam's "Angry Birds" trademark in its own name.

58.     Hartz continues its sales without any legal property rights to the Angry Birds trademark, or any approval, from Ms. Adams.

59.     It is believed, and therefore averred, that Hartz has made tens, if not hundreds, of millions of dollars from global sales of the Angry Birds pet toys.

60.     Hartz's last royalty payment to Juli Adams was in 2011 for $40.66.

### V.     COUNTS

### COUNT I

### BREACH OF CONTRACT

61.     Plaintiff hereby incorporates by reference and realleges each of the foregoing paragraphs as if fully set forth herein and further alleges as follows:

62.     On November 20, 2006, Plaintiff Juli Adams executed a "Confidential Exclusive License Agreement," with an initial term of five years.

63.     At the end of the five-year term, the Agreement requires that if the parties desired to extend, the parties were to enter into an amendment to the Agreement providing for an extension; otherwise the Agreement would end and the Intellectual Property, and all associated rights, would revert to Juli Adams.

64.     Pursuant to the Agreement, Ms. Adams "license[ed] to Hartz on an exclusive basis the Intellectual Property" in exchange for a royalty payment.

65.     The Agreement *did not* grant Hartz ownership of Juli Adams' Intellectual Property, including the "Angry Birds." Specifically, the Agreement expressly states that *"[e]ach*



1     *party acknowledges that no transfer of ownership of [sic] or a license to any intellectual*

2     *property is contemplated by this Agreement*, except as expressly provided here in … Hartz shall

3     have the right to file copyright and other intellectual property right filings, in its discretion, for

4     all Licensed Products."

5         66.     Although Hartz had no ownership interest, the Agreement assigned Hartz the "key

6     responsibility[y]" to "renew and protect any filings for the Intellectual Property as it relates to

7     the Licensed Products and pursue any claims of infringement or other claims relating to the

8     Intellectual Property as it relates to the Licensed Products sold by Hartz pursuant to the license

9     granted under [the] Agreement."

10        67.     The Agreement also gave Hartz "a right of first purchase and a right of first

11     refusal" of Juli Adams' Intellectual Property. In order to exercise the option, the Agreement

12     requires Hartz to "notify Juli Adams of its election to purchase the Intellectual Property." After

13     notification, Hartz and Juli Adams were required to "negotiate the terms and conditions of sale

14     and purchase of the Intellectual Property, including the purchase price." Hartz never sought to

15     purchase the Intellectual Property from Juli Adams.

16        68.     Hartz breached the Agreement in multiple respects, including but not limited to:

17     the unauthorized use of Juli Adam's Intellectual Property; the failure to safeguard Juli Adams'

18     Intellectual Property as required by the Agreement; the failure to purchase Juli Adams'

19     Intellectual Property as required by the Agreement for Hartz' continued use; and the continued

20     use of Juli Adams' Intellectual Property after the Agreement expired in 2012.

21        69.     As a direct, proximate, and legal result of the aforementioned breaches of the

22     Agreement, Plaintiff has suffered damages in an amount to be proven at trial.

23                         **COUNT II**

24        **BREACH OF CONTRACT – IMPLIED COVENANT OF**
                 **GOOD FAITH AND FAIR DEALING**

25

26        70.     Plaintiff hereby incorporates by reference and realleges each of the foregoing

    paragraphs as if fully set forth herein and further alleges as follows:

27

28

COMPLAINT - 13
Case No. 2:14-cv-1174
005029-11  703929 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

71.     On November 20, 2006, Plaintiff Juli Adams executed a "Confidential Exclusive License Agreement," with an initial term of five years.

72.     At the end of the five-year term, the Agreement requires that if the parties desired to extend, the parties were to enter into an amendment to the Agreement providing for an extension; otherwise the Agreement would end and the Intellectual Property, and all associated rights, would revert to Juli Adams.

73.     In New Jersey, every contract contains an implied covenant of good faith and fair dealing.

74.     The Agreement between Juli Adams and Hartz contained an implied covenant of good faith and fair dealing, pursuant to which Hartz was bound to exercise the discretion afforded it under the Agreement in good faith and to deal fairly with Plaintiff in that regard.

75.     To the extent that the Agreement permitted Hartz to utilize the "Angry Birds" mark and Juli Adams' Intellectual Property, Hartz was obligated not to exercise its discretion by acting in bad faith (for its own financial gain for the purposes of maximizing profits at Juli Adams' expense).

76.     Hartz breached its duties of good faith and fair dealing in at least the following respects, among others:

        a.      Entering a licensing agreement with Rovio to use the "Angry Birds" mark for Rovio-themed pet toys when it already had an agreement in force and effect to sell her products under that mark – for the sole purpose of maximizing its own profit;

        b.      Failing to notify Juli Adams when Hartz was approached by Rovio with Rovio's desire to have Rovio-themed pet toys that were sold under the "Angry Birds" mark;

        c.      Failing to include Juli Adams in any and all negotiations with Rovio concerning the use of the "Angry Birds" mark to sell Rovio-themed "Angry Birds" pet toys;

        d.      Attempting, through the use of Amendment Number One, to obtain Juli Adams' Intellectual Property without providing her any compensation or consideration for such Intellectual Property and without disclosing to her Hartz's desire and intent to use her "Angry Birds" mark to sell Rovio-themed "Angry Birds" pet toys;

COMPLAINT - 14
Case No. 2:14-cv-1174
005029-11  703929 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1          e.     Continuing to maintain registration of the "Angry Birds" after its

2    Agreement had expired when it knew it had no ownership of or rights to Juli Adams' Intellectual

3    Property, including "Angry Birds";

4          f.     Failing to pay to Juli Adams the 2.5% royalty called for under the

5    Agreement for any and all Rovio-themed "Angry Birds" pet toys that it sold while the

6    Agreement was in force;

7          g.     Continuing to sell pet toys under the "Angry Birds" mark after the

8    Agreement had expired; and

9          h.     Dumping the Juli Adams line of "Angry Birds" pet toys when approached

10   by Rovio to sell Rovio-themed "Angry Birds" pet toys.

11        77.    As a direct, proximate, and legal result of the aforementioned breaches of the

12   covenant of good faith and fair dealing, Plaintiff Juli Adams has suffered damages in an amount

13   to be proven at trial.

14   **COUNT III**

15   **UNJUST ENRICHMENT**

16        78.    Plaintiff hereby incorporates by reference and realleges each of the foregoing

17   paragraphs as if fully set forth herein and further alleges as follows:

18        79.    During the term of the Agreement and after it entered into its agreement with

19   Rovio, Hartz sold pet toys under the trademark "Angry Birds" but did not pay Juli Adams

20   royalties associated with such sales.

21        80.    After the five-year term of the Agreement expired in 2012, Defendant continued

22   to unjustly benefit from Juli Adams' Intellectual Property by selling Rovio-themed "Angry

23   Birds" pet toys when it no longer was the owner of the "Angry Birds" trademark for such

24   products.

25        81.    Hartz was aware and had knowledge of the unjust benefit it was receiving, and

26   has enjoyed its financial gains.

27        82.    Despite knowing that the Agreement expired and that it did not own the rights to

28   the Intellectual Property or the trademark "Angry Birds," Hartz accepted and retained the full



benefit it received from Rovio and the full benefit it received from sales of Rovio-themed "Angry Birds" pet toys.

83.    Hartz's retention of these benefits is inequitable and such benefits must be returned to Plaintiff Adams.

**COUNT IV**

**CONVERSION**

84.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

85.    Plaintiff Adams is the rightful owner of the "Angry Birds" trademark as it applies to plush toys, including pet toys.

86.    Defendant Hartz has willfully interfered with and converted, without lawful justification, Plaintiff Adams' ownership of the "Angry Birds" trademark by failing to assign the mark to Plaintiff when the Agreement between Plaintiff Juli Adams and Defendant Hartz expired.

87.    Defendant Hartz's failure to assign Plaintiff Adams the trademark has deprived Plaintiff Adams of the possession and use of that trademark.

88.    Defendant Hartz's interference has caused damages to Plaintiff in an amount to be proven at trial.

**COUNT V**

**FEDERAL DECLARATORY JUDGMENT ACT,
28 U.S.C. § 2201, *et seq.***

89.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

90.    An actual controversy has arisen and now exists between Plaintiff Juli Adams and Hartz concerning their respective rights and duties under the Agreement. Juli Adams contends that Hartz breached their Agreement by continuing to use, sell, market, and benefit from her Intellectual Property, including the trademark for "Angry Birds," without her permission and

COMPLAINT - 16
Case No. 2:14-cv-1174
005029-11  703929 V1



1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1  after their Agreement expired. Plaintiff Juli Adams further contends that Hartz wrongfully

2  converted her Intellectual Property, including the Angry Birds mark.

3      91.     A judicial determination is necessary and appropriate at this time, under the

4  circumstances presented, so that Plaintiff may ascertain her rights with respect to Hartz's use of

5  her Intellectual Property and so that Plaintiff Juli Adams may obtain federal registration of her

6  "Angry Birds" mark for use in the market for pet toys.

7      92.     Plaintiff seeks a declaration from the Court confirming that the Intellectual

8  Property and the "Angry Birds" trademark utilized by Hartz are her exclusive property and that

9  Hartz should have returned and released all rights to Plaintiff after the Agreement expired in

10  2012.

**COUNT VI**

**FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125**
**(Federally Registered Trademark Claim)**

13      93.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

14  herein and further alleges as follows:

15      94.     Hartz's actions as alleged herein constitute a false designation of origin in

16  violation of 15 U.S.C. § 1125(a).

17      95.     Plaintiff Adams coined and is the rightful owner of the "Angry Birds" trademark

18  for the category of "Toys and Sporting Goods."

19      96.     Plaintiff Adams is unable to register her trademark, however, because Hartz has

20  converted her mark for its sole use and is illegally and wrongfully maintaining such trademark

21  registration in its own name, therefore making it impossible for Plaintiff to do so.

22      97.     Should the Court issue the Declaratory Judgment sought above, Plaintiff will

23  promptly register her trademark to perfect her claim.  Until such time, however, Plaintiff should

24  be permitted to maintain this claim even absent registration of the mark in her name.

25      98.     Plaintiff Adams used the "Angry Birds" trademark in commerce when (a) it was

26  licensed to Hartz and (b) when Hartz sold Angry Birds plush toys based on Plaintiff Adams'

COMPLAINT - 17
Case No. 2:14-cv-1174
005029-11 703929 V1



designs with the mark "Angry Birds" and a trademark notice prominently displayed on the packaging.

99.     In connection with Hartz's advertisement, promotion, distribution, sales, and offers of sales of their goods, Hartz has used in commerce, and continues to use in commerce, the "Angry Birds" trademark without the knowledge or permission of Plaintiff Adams and in conflict with the Agreement between Plaintiff Adams and Hartz.

100.     In connection with Hartz's unauthorized advertisement, promotion, distribution, sales, and offers of sales of their goods, Hartz has affixed, applied, and used false designations of origin and false and misleading descriptions and representations, including the "Angry Birds" trademark, which tend falsely to describe the origin, sponsorship, association, or approval by Plaintiff Adams of the goods sold by Hartz.

101.     Hartz has willfully used the "Angry Birds" trademark with full knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of Plaintiff Adams.

102.     Hartz's unauthorized use in commerce of the "Angry Bird" trademark in connection with (a) licensing the mark for use by Rovio and (b) by using the mark on the packaging of plush toys based on Rovio's video game, Angry Birds, constitutes false descriptions and representations tending falsely to describe or represent Hartz and Hartz's products as being authorized, sponsored, affiliated, or associated with Plaintiff Adams in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.     Hartz has used the "Angry Birds" trademark with the express intent to improperly appropriate to itself the valuable trademark rights of Plaintiff.

104.     As a direct and proximate result of Hartz's wrongful acts, Plaintiff Adams has been damaged and will continue to be damaged by Hartz's unauthorized use of her trademark.

105.     By reason of the foregoing, Hartz is liable to Plaintiff Adams for an amount representing three (3) times Plaintiff Adams' damage or Hartz's illicit profits; and (b) reasonable attorney's fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

HAGENS BERMAN
1918 EIGHTH AVENUE, SUITE 3300 • SEATTLE, WA 98101
(206) 623-7292 • FAX (206) 623-0594

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT VII

### FALSE DESIGNATION OF ORIGIN, 15 U.S.C. § 1125
### (Common Law Trademark Claim)

106.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

107.   Hartz's actions as alleged herein constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

108.   Plaintiff Adams coined and is the rightful owner of the "Angry Birds" trademark for the category of "Toys and Sporting Goods."

109.   Plaintiff Adams used the "Angry Birds" trademark in commerce when (a) it was licensed to Hartz and (b) when Hartz sold Angry Birds plush toys based on Plaintiff Adams' designs with the mark "Angry Birds" and a trademark notice prominently displayed on the packaging.

110.   The "Angry Birds" trademark, as applied to "Toys and Sporting Goods," is inherently distinctive but also developed secondary meaning by the time Hartz's unauthorized use of the mark began.

111.   In connection with Hartz's advertisement, promotion, distribution, sales, and offers of sales of their goods, Hartz has used in commerce, and continues to use in commerce, the "Angry Birds" trademark without the knowledge or permission of Plaintiff Adams and in conflict with the Agreement between Plaintiff Adams and Hartz.

112.   In connection with Hartz's unauthorized advertisement, promotion, distribution, sales, and offers of sales of their goods, Hartz has affixed, applied, and used false designations of origin and false and misleading descriptions and representations, including the "Angry Birds" trademark, which tend falsely to describe the origin, sponsorship, association, or approval by Plaintiff Adams of the goods sold by Hartz.

113.   Hartz has willfully used the "Angry Birds" trademark with full knowledge of the falsity of such designations of origin, descriptions, and representations, all to the detriment of Plaintiff Adams.



114.    Hartz's unauthorized use in commerce of the "Angry Bird" trademark in connection with (a) licensing the mark for use by Rovio and (b) by using the mark on the packaging of plush toys based on Rovio's video game, Angry Birds, constitutes false descriptions and representations tending falsely to describe or represent Hartz and Hartz's products as being authorized, sponsored, affiliated, or associated with Plaintiff Adams in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

115.    Hartz has used the "Angry Birds" trademark with the express intent to improperly appropriate to itself the valuable trademark rights of Plaintiff Adams.

116.    As a direct and proximate result of Hartz's wrongful acts, Plaintiff Adams has been damaged and will continue to be damaged by Hartz's unauthorized use of her trademark.

117.    By reason of the foregoing, Hartz is liable to Plaintiff Adams for an amount representing three (3) times Plaintiff Adams' damage or Hartz's illicit profits; and (b) reasonable attorney's fees, investigative fees, and pre-judgment interest pursuant to 15 U.S.C. § 1117.

## COUNT VIII

## ACCOUNTING

118.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

119.    Hartz has received money, which is due to Plaintiff.

120.    The amount of money due to Plaintiff is unknown to Plaintiff, and cannot be ascertained without an accounting of Hartz's financial information. Plaintiff is informed and believes and thereon alleges that the amount due to Plaintiff is in the millions of dollars.

## JURY TRIAL DEMAND

Plaintiff Adams respectfully requests a trial by jury for all claims so triable.



1    DATED:  August 4, 2014.

2                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**

3

4                                           By:   s/ *Anthony D. Shapiro*
                                                  Anthony D. Shapiro, WSBA #12824
5                                           By:   s/ *Thomas E. Loeser*
                                                  Thomas E. Loeser, WSBA #38701
6                                           HAGENS BERMAN SOBOL SHAPIRO LLP
7                                           1918 Eighth Avenue, Suite 3300
                                            Seattle, WA 98101
8                                           Telephone: (206) 623-7292
                                            tony@hbsslaw.com
9                                           toml@hbsslaw.com

10                                          Simon B. Paris
                                            Patrick Howard
11                                          SALTZ, MONGELUZZI,
                                            BARRETT & BENDESKY, P.C.
12                                          One Liberty Place, 52nd Floor
                                            1650 Market Street
13                                          Philadelphia, PA 19103
                                            Telephone: (215) 575-3985
14                                          sparis@smbb.com
                                            phoward@smbb.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - 21
Case No. 2:14-cv-1174
005029-11  703929 V1

