1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULI ADAMS,

                    Plaintiff,

    v.

THE HARTZ MOUNTAIN
CORPORATION,

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:14-cv-1174 RSL

**DEFENDANT'S MOTION TO
DISMISS PURSUANT TO
FRCP 12(b)(6)**

**NOTE ON MOTION CALENDAR:
November 7, 2014**

DEFENDANT'S MOTION TO DISMISS
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1
NY01\SteiG\3384797.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

ARGUMENT ..............................................................................................................5

I.    PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE ON THE FACE OF THE AGREEMENT THERE IS NO CONTRACT WITH RESPECT TO THE ANGRY BIRDS TRADEMARK......................................................6

II.    PLAINTIFF LACKS STANDING TO BRING A "FEDERALLY REGISTERED TRADEMARK CLAIM"..........................................................9

III.    PLAINTIFF DOES NOT PROPERLY PLEAD OWNERSHIP OF COMMON LAW TRADEMARK RIGHTS ............................................................10

IV.    PLAINTIFF'S CONVERSION CLAIM MUST BE DISMISSED................................14

V.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW .................14

VI.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW ........................................................................................................15

VII.    PLAINTIFF IS NOT ENTITLED TO A DECLARATORY JUDGMENT ...................16

VIII.    PLAINTIFF'S CLAIM FOR AN ACCOUNTING CANNOT STAND.........................17

IX.    THE AGREEMENT PROHIBITS CONSEQUENTIAL DAMAGES ...........................18

CONCLUSION ...........................................................................................................18

DEFENDANT'S MOTION TO DISMISS - i
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1
NY01\SteiG\3384797.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,*
    237 F.3d 198 (3d Cir. 2000) ............................................................. 10

*Am. Handkerchief Corp. v. Frannat Realty Co.,*
    109 A.2d 793 (N.J. 1954) ................................................................... 8

*Andela v. Administrative Office of U.S. Courts,*
    569 Fed. Appx. 80 (3d Cir. 2014) ................................................... 16

*Aralac, Inc. v. Hat Corp. of Am.,*
    166 F.2d 286 (3d Cir. 1948) ............................................................. 17

*Benta v. Carroll,*
    550 Fed. Appx. 103 (3d Cir. 2014) ................................................. 17

*Clarkson v. VioQuest Pharm.,*
    2011 WL 3924824 (N.J. Sept. 8, 2011) ......................................... 14

*Doeblers' Pennsylvania Hybrids, Inc. v. Doebler,*
    442 F.3d 812 (3d Cir. 2006) ............................................................. 12

*E.A. Sween Co. v. Deli Exp. of Tenafly, LLC,*
    No. 2:13-6337 (KM), 2014 WL 1911878 (D.N.J. May 13, 2014) ...... 10

*Englander v. McKesson-Roeberkuebler Co.,*
    185 A. 917 (N.J. Ch. 1936) .............................................................. 11

*Freedman Truck Ctr. v. General Motors Corp.,*
    784 F. Supp. 167 (D.N.J. 1992) ...................................................... 15

*Gordon v. United Cont'l Holding, Inc.,*
    No. 2:13-CV-05967 (SDW), 2014 WL 4354067 (D.N.J. Sept. 3, 2014) ...... 6

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.,*
    No. 03-4558 (HAA), 2008 WL 4126264 (D.N.J. Sept. 2, 2008) ...... 15

*In re Joey's Steakhouse, LLC,*
    474 B.R. 167 (Bankr. E.D. Pa. 2012) ............................................... 7

*Luso Fuel, Inc. v. BP Products North America Inc.,*
    No. 08-3947 (DMC), 2009 WL 1873583 (D.N.J. June 29, 2009) ...... 15

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

*Marshak v. Treadwell*,
   595 F.3d 478 (3d Cir. 2009) ................................................................... 16

*Mollo v. Passaic Valley Sewerage Comm'rs*,
   No. 07-1655 (DRD), 2009 WL 5216976 (D.N.J. Dec. 30, 2009) .......................... 7

*Prima v. Darden Rests., Inc.*,
   78 F. Supp. 2d 337 (D.N.J. 2000) ............................................................ 14

*Rolley, Inc. v. Younghusband*,
   204 F.2d 209 (9th Cir. 1953) .................................................................. 10

*Shields v. Boeing Co.*,
   No. C11-926Z, 2011 WL 2680506 (W.D. Wash. July 8, 2011) ........................... 5

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ................................................................. 6

*StrikeForce Tech., Inc. v. Whitesky, Inc.*,
   No. 13-1895 (SRC), 2013 WL 3508835 (D.N.J. July 11, 2013) .......................... 14

*Travelers Ins. Co. v. Davis*,
   490 F.2d 536 (3d Cir. 1974) ................................................................... 16

*Tritz v. U.S. Postal Serv.*,
   721 F.3d 1133 (9th Cir. 2013) ................................................................. 6

**STATUTES**

15 U.S.C. § 1114 .................................................................................... 9

15 U.S.C. § 1125 ............................................................................... 9, 10

Fed. R. Civ. P. 12(b)(6) ...................................................................... 1, 3, 6

**OTHER AUTHORITIES**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.
2014) ........................................................................................... 12, 13

DEFENDANT'S MOTION TO DISMISS - iii
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1
NY01\SteiG\3384797.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Defendant, The Hartz Mountain Corporation ("Hartz"), respectfully submits this Memorandum of Law in support of its motion to dismiss Plaintiff Juli Adams's ("Plaintiff" or "Adams") Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## **PRELIMINARY STATEMENT**

All of the claims in the Complaint rely upon Plaintiff's incorrect contention that a Confidential Exclusive License Agreement[1] executed by the parties on November 20, 2006 ("Agreement") constitutes a license from Plaintiff to Hartz of the trademark ANGRY BIRDS, and that Hartz thereafter made unauthorized use of the ANGRY BIRDS trademark.  However, the clear language of the Agreement, attached as Exhibit A to the Complaint, demonstrates that the only "Intellectual Property" licensed from Plaintiff to Hartz were Plaintiff's drawings or illustrations of animals.  Therefore, all of Plaintiff's claims must be dismissed as a matter of law.

Plaintiff does not allege that she ever used the ANGRY BIRDS trademark for the promotion or sale of any products in U.S. commerce.  She contends instead that she "coined the term" ANGRY BIRDS, and that her license of illustrations to Hartz constituted a license for Hartz to use the trademark ANGRY BIRDS.  Even if Plaintiff's contentions are taken as true, "coining a term" does not give rise to trademark rights under U.S. law.  Neither did Plaintiff acquire trademark rights via Hartz's use of the mark in connection with licensed goods, because the plain language of the Agreement makes clear that there was no license of the ANGRY BIRDS mark.  Indeed, there is no mention of the trademark ANGRY BIRDS in the entire Agreement, let alone language which constitutes a valid license of the trademark from Plaintiff to Hartz.

The Complaint repeatedly refers to "Intellectual Property" as if the trademark ANGRY BIRDS is part of the Agreement's definition of "Intellectual Property."  However, the plain

---

[1] Plaintiff's disclosure of the terms of the Agreement and the negotiations that gave rise to the Agreement by disclosing the same in the Complaint and filing an unredacted copy of the Agreement with the Court clerk constitute a breach of Article 7.4.

DEFENDANT'S MOTION TO DISMISS- 1
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

language of the Agreement demonstrates this is not the case.  The Agreement clearly defines the "Intellectual Property" that is the subject of the Agreement only as the artwork included as Appendix B of the Agreement.  The trademark ANGRY BIRDS is not included in Appendix B, or anywhere else in the Agreement.

In fact, the Complaint admits that Hartz is the sole registered owner of a U.S. Trademark Registration for the word mark ANGRY BIRDS.  The plain language of the Agreement upon which all of Plaintiff's claims rely prohibits her from challenging Hartz's rights in the trademark.  Even if the Court found – contrary to the clear language of the Agreement – that the Agreement contemplated a trademark license, the language of the Agreement is not sufficient to constitute a valid and enforceable trademark license because it does not even mention the trademark ANGRY BIRDS, and does not contain the necessary quality control provisions.

Plaintiff's claims for breach of contract, infringement, unjust enrichment and an accounting depend upon the presumption that she owns trademark rights in the ANGRY BIRDS mark because she "coined the term" and thereafter licensed such rights to Hartz in the Agreement.  However, as coining a term does not establish trademark rights as a matter of law, and as it is clear on the face of the Agreement that it contains no license of the ANGRY BIRDS trademark from Plaintiff to Hartz, such claims must be dismissed.  Plaintiff's claim for conversion must also be dismissed because such a claim cannot be predicated on intangible intellectual property as a matter of law.  Plaintiff's claim for declaratory judgment must also be dismissed as a matter of law because it merely seeks recourse for prior actions which are duplicative of the other claims.  Likewise, Plaintiff's claim for an accounting seeks damages for claims that fail and, therefore, cannot stand.  Therefore, all of the claims in Plaintiff's Complaint should be dismissed as a matter of law.[2]

---

[2] The clear language of Article 6.5 of the Agreement prohibits the award of consequential damages (Compl. Ex. A at 6.5).  Therefore, any claims for such damages, including lost profits, loss of goodwill, or any special, indirect or consequential or incidental damages, should be dismissed as a matter of law.

DEFENDANT'S MOTION TO DISMISS- 2
NO. 2:14-CV-1174 RSL

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

## STATEMENT OF FACTS[3]

Plaintiff is a contemporary painter who resides in Seattle, Washington.  (Compl. [4] ¶ 10.)  Hartz is a pet product company headquartered in New Jersey.  (Compl. ¶ 11.)  In the summer of 2006, Plaintiff exhibited her original art work at a festival in Montana, which included drawings of cartoon animals.  (Compl. ¶ 17.)  A representative of Hartz asked Plaintiff if she would be interested in designing a line of pet toys for Hartz.  (Compl. ¶ 18.)  Plaintiff thereafter created a number of drawings of various animals, including birds, bears, gophers, and rabbits.  (Compl. ¶ 19.)  Once the designs were completed, Hartz and Plaintiff negotiated and, on November 20, 2006, executed the Agreement.  (Compl. ¶¶ 21-22.)

The Agreement had an initial term of five years that began after the "first sale of each Licensed Product."  (Compl. Ex. A at App'x A.)  The first sale of any Licensed Product was in or around March 2007.  (Compl. ¶ 24.)  The initial term of the Agreement thus terminated in March 2012.  (*Id.*)  In the event the parties desired to extend the Agreement beyond its initial term, they were to enter into an amendment thereof.  (Compl. ¶ 25.)  No such amendment was executed.  (Compl. ¶ 53.)

Under the Agreement, Plaintiff licensed to Hartz:

> [O]n an exclusive basis (which shall also exclude Juli Adams) the Intellectual Property for the purpose of the use, manufacture, packaging, promotion, advertising, merchandising and sale of the Licensed Products in the Distribution Area in the Channels of Trade, provided that Hartz agrees not to produce two dimensional wall art other than for promotional, advertising, merchandising and sale purposes of the Licensed Products.

(Compl. Ex. A at Art. 2.1.)  Hartz owes no duty of exclusivity to Plaintiff under the Agreement. Article 2.1 provides: "Nothing set forth herein shall prohibit Hartz from selling any products or services whatsoever using the Intellectual Property or Hartz'[s] own intellectual property, whether in or outside of the Distribution Area, whether to the same customers of Juli Adams or

---

[3] To the extent Plaintiff's factual allegations in the Complaint are cited herein, they are accepted as true only for purposes of the present motion to dismiss pursuant to Rule 12(b)(6).  Defendant expressly reserves its right to challenge any such factual allegations and to raise all affirmative defenses and counterclaims.

[4] "Compl." refers to Plaintiff's Complaint, filed on August 4, 2014, which attaches as Exhibit A the Agreement, and as Exhibit B Amendment Number One to the Agreement (ECF No. 5).

DEFENDANT'S MOTION TO DISMISS- 3
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

1   otherwise." (*Id.*)

2        The Agreement defines "Intellectual Property" as:

3        *[A]ll intellectual property of Juli Adams licensed under this Agreement*
        *including (a) the intellectual property attached hereto as __Appendix B__ and (b)*
4        *such future intellectual property of Juli Adams as Hartz shall request from time*
        *to time, which additional intellectual property shall be added to this Agreement*
5        *upon notice by Hartz to Juli Adams and pursuant to an amendment to this*
        *Agreement, which amendment shall have the same terms and conditions as set*
6        *forth in this Agreement unless the parties otherwise agree in such amendment.*

7   (Compl. Ex. A at App'x A.) *__Appendix B__* of the Agreement, in turn, annexes thirty-seven pages

8   of Plaintiff's drawings. (Compl. ¶ 27, Ex. A at App'x B.) "Each party acknowledge[d] that no

9   transfer of ownership of or a license to any intellectual property is contemplated by this

10  Agreement, except as expressly provided herein." (Compl. Ex. A at Art. 8.) Article 6.2.1 of

11  the Agreement further provides that Plaintiff shall "not seek, directly or indirectly, the

12  invalidity or challenge or claim against the Intellectual Property or any Hartz intellectual

    property or Proprietary Technology at any time." (Compl. Ex. A at Art. 6.2.1.)
13

14       The Agreement defines "Licensed Products" to mean "all products and services

15  regardless of class or kind related to the Hartz business from time to time but including without

16  limitation the products set forth on __Exhibit A__ attached hereto and made an integral part hereof."

17  (Compl. Ex. A. at App'x A.) As the Agreement does not attach an Exhibit A, the definition of

18  Licensed Products is "all products and services regardless of class or kind related to the Hartz

19  business from time to time." (*Id.*) Pursuant to the Agreement, "Distribution Area" means "the

20  world" and "Channels of Trade" means "all channels of trade without limitation . . . ." (*Id.*)

21       Article 8 of the Agreement grants Hartz the "right to file copyright and other intellectual

22  property right filings, in its discretion, for all of the Licensed Products." (Compl. Ex. A at Art.

23  8.) On May 22, 2007, Hartz and Plaintiff executed Amendment Number One to the

24  Agreement, which amended the end of Article 8 to read as follows:

25       *Hartz shall have the right to file copyright, trademark and other intellectual*
        *property right filings in Hartz's name, in its discretion, for all of the Licensed*
26       *Products. Additionally, Hartz shall have the right to obtain the trademark "The*
        *Juli Adams Collection" in Hartz's name and use it for Hartz's products.*

27  (Compl. Ex. B.) Aside from granting Hartz the right to use the mark "The Juli Adams

DEFENDANT'S MOTION TO DISMISS- 4
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

128607.0001/6187918.1

Collection," Amendment Number One does not bestow Hartz with any additional rights that are not already licensed in the underlying Agreement. (*Id.*) The first sentence merely rewords Article 8 to explicitly include references to "trademark" and "in Hartz's name." (*Compare to* Compl. Ex. A. at Art. 8.) The second sentence adds the provision that Hartz could trademark "The Juli Adams Collection" in connection with the products if it so desired. (*Id.*) The Complaint does not allege that Hartz used or registered  trademark "The Juli Adams Collection."

Pursuant to an application filed on March 28, 2007, Hartz owns U.S. Trademark Registration No. 3,473,227 for the mark ANGRY BIRDS as used in connection with "Pet toys." (Compl. ¶ 33.) In or around 2007, Hartz began selling a line of pet toys which were created from Plaintiff's licensed illustrations in connection with which Hartz used the mark to identify the products. (Compl. ¶¶ 24, 31-32.) The packaging for the products bearing the ANGRY BIRDS mark displayed Plaintiff's illustrations and included the notice "Licensed *from the art* of Juli Adams." (Compl. ¶¶ 31-32 (emphasis added).) The packaging for the products does not contain any claim that Plaintiff owned any trademark rights related to the licensed products. (Compl. ¶¶ 31-32.)

## **ARGUMENT**

On a motion to dismiss pursuant to Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Shields v. Boeing Co.*, No. C11-926Z, 2011 WL 2680506, at *1 (W.D. Wash. July 8, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a motion to dismiss, the Court may "consider only allegations contained in the pleadings, exhibits attached to the complaint, and matter properly subject to judicial notice." *Id.* The Court is "not required to accept as true conclusory allegations which

DEFENDANT'S MOTION TO DISMISS- 5
NO. 2:14-CV-1174 RSL

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (internal citations omitted).   Indeed, where "the documents attached to [plaintiff]'s complaint defeat her breach of contract allegations, [plaintiff] cannot state a claim that would entitle her to relief." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1140 (9th Cir. 2013) (citing *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1049 (9th Cir. 2000) ("In determining whether plaintiffs can prove facts in support of their claim that would entitle them to relief, we may consider facts contained in documents attached to the complaint.")).

## I.   PLAINTIFF'S BREACH OF CONTRACT CLAIM FAILS BECAUSE ON THE FACE OF THE AGREEMENT THERE IS NO CONTRACT WITH RESPECT TO THE ANGRY BIRDS TRADEMARK

To state a claim for breach of contract under New Jersey law[5], a plaintiff must allege: (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Gordon v. United Cont'l Holding, Inc.*, No. 2:13-CV-05967 (SDW), 2014 WL 4354067, at *4 (D.N.J. Sept. 3, 2014) (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)).

Plaintiff's breach of contract claim rests on the allegation that, pursuant to the Agreement, she licensed Hartz the right to use of the ANGRY BIRDS trademark.  In particular, she alleges that Hartz breached the Agreement through "the unauthorized use of [Adams's] Intellectual Property; the failure to safeguard [Adams's] Intellectual Property as required by the Agreement; the failure to purchase [Adams's] Intellectual Property as required by the Agreement for Hartz'[s] continued use; and the continued use of [Adams's] Intellectual Property after the Agreement expired in 2012."  (Compl. ¶ 68.)  More specifically, Plaintiff alleges that Hartz breached the Agreement when it entered into a deal with Rovio Entertainment, Ltd. ("Rovio"), the creator of the video game "Angry Birds," to sell pet toys

---

[5] The Agreement provides that New Jersey law applies to its validity, interpretation and performance.  (Compl. ¶ 16, Ex. A at Art. 10.14.)

DEFENDANT'S MOTION TO DISMISS- 6
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

utilizing intellectual property of Rovio under the ANGRY BIRDS mark.  (Compl. ¶¶ 6, 45-48, 55.)  However, the clear terms of the Agreement demonstrate that there was no contract to license any trademark from Plaintiff to Hartz.  The trademark ANGRY BIRDS is not even referenced  in the Agreement.  All that was licensed under the Agreement was the use of Plaintiff's artwork.

New Jersey law requires that contracts "be construed according to the plain and ordinary meaning of their terms.  'Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract.'  Thus, the Court must give force to the intent of the parties by interpreting the contract according to the plain meaning of its term."  *Mollo v. Passaic Valley Sewerage Comm'rs*, No. 07-1655 (DRD), 2009 WL 5216976, at *16 (D.N.J. Dec. 30, 2009) (internal citations omitted).

Here, the Agreement defines Intellectual Property as:

> [A]ll intellectual property of Juli Adams licensed under this Agreement including (a) the intellectual property attached hereto as *Appendix B* and (b) such future intellectual property of Juli Adams as Hartz shall request from time to time, which additional intellectual property shall be added to this Agreement upon notice by Hartz to Juli Adams and pursuant to an amendment to this Agreement, which amendment shall have the same terms and conditions as set forth in this Agreement unless the parties otherwise agree in such amendment.

(Compl. Ex. A at App'x A.)  Appendix B consists of nothing more than pages of Plaintiff's illustrations of animals.  (Compl. Ex. A at App'x B.)  Appendix B does not reference the trademark ANGRY BIRDS, or any other trademark.  (*Id.*)  The parties executed no amendments that add license of the ANGRY BIRDS trademark nor does Plaintiff allege that they did.  As such, the Intellectual Property licensed under the Agreement is clearly confined to the illustrations contained in Appendix B to the Agreement.  Thus, even if the Court construes the pleadings in Plaintiff's favor, the plain language of the contract demonstrates that the word mark ANGRY BIRDS, which underlies Plaintiff's breach of contract claim, was not the subject of the parties' Agreement.  The inquiry must end here, as "[e]ach party acknowledge[d] that no transfer of ownership of or a license to any intellectual property is contemplated by this

DEFENDANT'S MOTION TO DISMISS- 7
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Agreement, *except as expressly provided herein*." (Compl. Ex. A at Art. 8 (emphasis added).)[6] Moreover, the plain language of the Agreement bars Plaintiff's challenge to Hartz's ownership of the ANGRY BIRDS mark. (Compl. Ex. A at Art. 6.2.1.) Indeed, Plaintiff admits that the Intellectual Property contemplated by the Agreement is distinct from the ANGRY BIRDS trademark, as she seeks a declaration that the "Intellectual Property and the 'Angry Birds' trademark" are her exclusive property. (Compl. ¶ 92.) Therefore, as the parties had no contract with respect to the trademark, Hartz's use of the trademark ANGRY BIRDS cannot constitute breach of the Agreement as a matter of law.

Plaintiff's allegation that Amendment Number One to the Agreement is void for lack of consideration is a red herring which does not save her claims from dismissal. (Compl. ¶¶ 36-37.) As an initial matter, the clear and unambiguous language of the Amendment states that the parties agree it was entered into "for good and valuable consideration." (Compl. Ex. B.) "[I]t is an elementary principle that the law will not enter into an inquiry as to the adequacy of the consideration." *Am. Handkerchief Corp. v. Frannat Realty Co.*, 109 A.2d 793, 796 (N.J. 1954). In any event, Article 8 of the original Agreement provides that "Hartz shall have the right to file copyright and other intellectual property right filings, in its discretion, for all of the Licensed Products." (Compl. Ex. A at Art. 8.) The first sentence of Amendment Number One simply restates the foregoing, explicitly referencing "trademark" among the enumerated examples of "intellectual property rights filings" and that such filings are "in Hartz's name." (Compl. Ex. B.) This amendment does not grant Hartz any greater rights than it had under the Agreement in this respect and is therefore not a relevant change. The second sentence adds the provision allowing Hartz to use or register the trademark "The Juli Adams Collection." (*Id.*) Therefore, assuming *arguendo* the Amendment has no effect, it is of no import as Article 8 of the Agreement provides that Hartz was entitled to register "intellectual property," which

---

[6] Plaintiff contends this provision means that the Agreement did not grant Hartz any ownership interest in the ANGRY BIRDS mark. (Compl. ¶ 28.) However, at most, this provision means Hartz has no interest in the Intellectual Property (defined as the illustrations) licensed under the Agreement. On its face, the Intellectual Property licensed by the Agreement does not include the ANGRY BIRDS mark.

DEFENDANT'S MOTION TO DISMISS- 8
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

128607.0001/6187918.1

unquestionably includes trademarks in its own name.  The Complaint does not allege Hartz's unauthorized use or registration of the trademark "The Juli Adams Collection."  Therefore, the Amendment has no relevance to Plaintiff's claims.  Moreover, as set forth above, even if Plaintiff is correct that she remains the "sole owner" of the Intellectual Property licensed by the Agreement, it is clear on the face of the Agreement that such Intellectual Property does not include the ANGRY BIRDS trademark.

Since the Agreement on its face does not mention the ANGRY BIRDS trademark or consist of a license of the ANGRY BIRDS mark, Hartz's exploitation of the mark cannot, as a matter of law, constitute a breach of the Agreement.  Accordingly, Plaintiff's claim for breach of contract must be dismissed as a matter of law.

## II.    PLAINTIFF LACKS STANDING TO BRING A "FEDERALLY REGISTERED TRADEMARK CLAIM"

In Count VI of the Complaint, Plaintiff purports to bring a "Federally Registered Trademark Claim" under Section 43 of the Lanham Act, 15 U.S.C. § 1125.  (Compl. ¶ 94.) However, a claim for infringement of a federally registered trademark is properly pled under Section 32 of the Lanham Act, 15 U.S.C. § 1114.  Thus, on its face, the Complaint fails to state a claim of infringement of a federally registered trademark.

In any event, Plaintiff does not have the requisite standing to sustain a claim for federal registered trademark infringement.  Section 32 of the Lanham Act imposes liability upon:

> *(1) Any person who shall, without the consent of the registrant—*
> *(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation*
> *of a registered mark in connection with the sale, offering for sale, distribution,*
> *or advertising of any goods or services on or in connection with which such use*
> *is likely to cause confusion, or to cause mistake, or to deceive . . . .*

15 U.S.C. 1114.  Accordingly, standing to sue is conferred upon "the registrant . . . of a registered mark."  *Id.*

Here, Plaintiff lacks standing to bring a claim under Section 32 of the Lanham Act because she does not own the rights to a U.S. trademark registration for the ANGRY BIRDS

DEFENDANT'S MOTION TO DISMISS- 9
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

trademark.  As Plaintiff concedes, Hartz filed for and was granted U.S. Trademark Registration No. 3,473,227 for ANGRY BIRDS for pet products.  (Compl. ¶ 33.)  Hartz's valid U.S. trademark registration constitutes *prima facie* evidence of its ownership of the ANGRY BIRDS mark.  *See E.A. Sween Co. v. Deli Exp. of Tenafly*, LLC, No. 2:13-6337 (KM), 2014 WL 1911878, at *4 (D.N.J. May 13, 2014).  Plaintiff does not contest either the validity of the mark or the fact that the registration is in Hartz's name.  Indeed, Article 8 of the Agreement makes clear that Hartz had the right to make such trademark filings in its own discretion (Compl. Ex. A at Art. 8), and Article 6.2.1 of the Agreement bars Plaintiff from seeking "directly or indirectly, the invalidity or challenge or claim against the Intellectual Property or any Hartz intellectual property or Proprietary Technology at any time" (Compl. Ex. A at Art. 6.2.1). Accordingly, to the extent Plaintiff's complaint can be construed to assert a claim for federal registered trademark infringement, any such claim should be dismissed for lack of standing and as any such claim is prohibited by the plain terms of the Agreement.

## III.    PLAINTIFF DOES NOT PROPERLY PLEAD OWNERSHIP OF COMMON LAW TRADEMARK RIGHTS

To state a claim for false designation of origin under 15 U.S.C. § 1125(a), "a plaintiff must demonstrate that: (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210-11 (3d Cir. 2000).   Here, Plaintiff's claim that she owns rights in and to the ANGRY BIRDS trademark fails as a matter of law.

Plaintiff alleges that she "coined and is the rightful owner of the 'Angry Birds' trademark for the category of 'Toys and Sporting Goods.'" (Compl. ¶ 108.)  However, it is well established that "coining" a term does not amount to trademark ownership.  Trademark

rights arise only as the result of use of the mark in connection with the sale of goods or services.  *See generally* J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 16:11 (4th ed. 2014) [hereinafter "*McCarthy on Trademarks*"]; *see also Rolley, Inc. v. Younghusband*, 204 F.2d 209, 212 (9th Cir. 1953) ("He who first affixes a trade-mark upon his goods is its owner, not the person who first conceives the idea.").  "Mere adoption of a mark or sign, and a public declaration, by advertisement or otherwise that a person will, at a subsequent time, put a particular thing on the market, marked or distinguished, in a certain way, create no right.  Until the thing is actually on the market, marked by the particular mark of the person intending to acquire a title, no property right in the mark arises."  *Englander v. McKesson-Roeberkuebler Co.*, 185 A. 917, 921 (N.J. Ch. 1936) (citation and quotation marks omitted).

Plaintiff does not allege that she engaged in use of the mark ANGRY BIRDS in connection with the promotion or sale of goods or services at any time.  Instead, Plaintiff claims that her rights in the mark result from Hartz's use pursuant to license under the Agreement.  Plaintiff alleges that she "used the 'Angry Birds' trademark in commerce when (a) it was licensed to Hartz, and (b) when Hartz sold Angry Birds plush toys based on Plaintiff Adams'[s] designs with the mark 'Angry Birds' and a trademark notice prominently displayed on the packaging.[7]"  (Compl. ¶ 109.)  However, this is belied by the plain language of the Agreement, which clearly only licenses the use of Plaintiff's illustrations.  Indeed, there is no mention of the trademark ANGRY BIRDS in the entire Agreement.  Because there was no license of any trademark from Plaintiff to Hartz, Hartz's use of the ANGRY BIRDS trademark inured only to the benefit of Hartz.  There is no basis in the law for Plaintiff's proposition that

---

[7] Any trademark notice on the Angry Birds product packaging refers to Hartz's ownership of the ANGRY BIRDS trademark.  The packaging shown in the Complaint clearly demonstrates that the notice of Plaintiff's rights was limited to licensed use of Plaintiff's "art," not any trademark.  (Compl. ¶ 32.)

DEFENDANT'S MOTION TO DISMISS- 11
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

Plaintiff has ownership rights in any trademark Hartz chooses to use in connection with products that happen to include Plaintiff's illustrations.  Nor does the Complaint allege any. Therefore, Plaintiff's license of artwork to Hartz for the licensed products bestows no rights to Plaintiff for any trademark or brand name used to identify the licensed goods.

Even if Plaintiff intended to license the use of the ANGRY BIRDS trademark – which she did not – the plain language of the Agreement does not constitute a valid and enforceable trademark license as a matter of law because it does not even mention the ANGRY BIRDS mark and contains no quality control provisions.  *See 3 McCarthy on Trademarks* § 18:42 ("Today, trademark licensing is permitted so long as the licensor maintains adequate control over the nature and quality of goods and services sold under the mark by the licensee."); *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006) ("'[T]he only effective way to protect the public where a trademark is used by licensees is to place on the licensor the affirmative duty of policing in a reasonable manner the activities of his licensees.'") (citation omitted; alteration in original).  Thus, although it is true that "[o]wnership rights in a trademark or service mark can be acquired and maintained through the use of the mark by a controlled licensee even when the first and only use of the mark was made, and is being made, by the licensee," a licensee's use of a trademark inures to the benefit of the licensor only if, in granting the licensee the exclusive right to use the trademark, the licensor does not abandon its rights to the trademark.  *Doebler*, 442 F.3d at 823 (citing 2 *McCarthy on Trademarks* § 18:46 (4th ed. 2005)).

The exclusive use of a trademark by a licensee constitutes abandonment unless the "license agreement provides for adequate control by the licensor of the nature and quality of the goods or services."  *Id.*  A license agreement that provides for adequate control will generally

DEFENDANT'S MOTION TO DISMISS- 12
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

"contain[] express terms giving the licensor power to engage in quality control to ensure that the licensee does not engage in mere 'naked' use of the mark" – i.e., "[u]ncontrolled licensing of a mark whereby the licensee can place the mark on any quality or type of goods or services[.]"  *Id.*

Here, the Agreement does not even mention the trademark ANGRY BIRDS, let alone provide that Plaintiff will have any quality control over the Licensed Goods.  In fact, the language of the Agreement demonstrates that Hartz retained ownership of the trademark and related packaging of the Licensed Products.  (Compl. Ex. A at Art. 8.)  Moreover, Plaintiff was required to obtain Hartz's permission prior to posting content on her website relating to the Licensed Products: "[Plaintiff] shall be permitted to . . . post on Juli Adams'[s] website pictures of the Licensed Products provided Hartz shall have reviewed and approved in advance any such postings and further provided [Plaintiff] shall not sell, offer or otherwise promote the sales of the Licensed Products on her website without the prior written approval of Hartz."  (Compl. Ex. A at Art. 7.6.)  Thus, to the extent the Agreement grants any trademark license, it is a limited license from Hartz to Plaintiff allowing her to use the trademarks to promote her artwork during the term of the Agreement.

Therefore, if the Court assumed, *arguendo* and contrary to the plain language of the Agreement, that the Agreement included a trademark license of ANGRY BIRDS from Plaintiff to Hartz, it was void *ab initio* for failure to include necessary quality control provisions. Accordingly, Hartz's use of any such trademark would not inure to Plaintiff's benefit.  Because Plaintiff cannot establish ownership of the ANGRY BIRDS mark via her use of the mark in commerce, or via a valid and enforceable license to Hartz in the Agreement, her claim for common law trademark infringement must be dismissed as a matter of law.  Moreover, because

DEFENDANT'S MOTION TO DISMISS- 13
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

the plain language of the Agreement bars Plaintiff from challenging Hartz's rights in the trademark (Compl. Ex. A at Art. 6.2.1), Plaintiff's claims must be dismissed.

## IV.    PLAINTIFF'S CONVERSION CLAIM MUST BE DISMISSED

In support of her claim for conversion, Plaintiff alleges that Hartz "converted, without lawful justification, Plaintiff Adams'[s] ownership of the 'Angry Birds' trademark by failing to assign the mark to Plaintiff when the Agreement . . . expired." (Compl. ¶ 86.)  As discussed above, Plaintiff does not, nor did she ever, own the ANGRY BIRDS trademark.  Her claim for conversion, therefore, must fail for this reason.  In any event, under New Jersey law, "a cause of action for conversion relates to interference with tangible property and does not protect rights to intangible property [such as] . . . intellectual property . . . ."  *StrikeForce Tech., Inc. v. Whitesky, Inc.*, No. 13-1895 (SRC), 2013 WL 3508835, at *8 (D.N.J. July 11, 2013).  Thus, for this additional and independent reason, Plaintiff's claim for conversion must be dismissed as a matter of law.

## V.    PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

Plaintiff's claim for breach of the duty of good faith and fair dealing is likewise premised upon Plaintiff's ownership of the ANGRY BIRDS trademark and license thereof to Hartz. (Compl. ¶ 76.)  However, as discussed in detail above, Plaintiff never owned the mark, and the Agreement does not constitute a trademark license.  As such, Plaintiff cannot, as a matter of law, make a showing "'sufficient to support the conclusion that the party alleged to have acted in bad faith [i.e., Hartz] has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.'"  *Clarkson v. VioQuest Pharm.*, 2011 WL 3924824, at *8 (N.J. Sept. 8, 2011) (unpublished opinion) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005)).  "[T]he implied duty of good

DEFENDANT'S MOTION TO DISMISS- 14
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

faith and fair dealing 'does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement.'" *Luso Fuel, Inc. v. BP Products North America Inc.*, No. 08-3947 (DMC), 2009 WL 1873583, at *5 (D.N.J. June 29, 2009) (citation omitted).

Here, the Agreement on its face is a license from Plaintiff to Hartz to use her artwork. Plaintiff cannot be heard now to invoke the implied duty of good faith and fair dealing to expand the scope of her Agreement.  Indeed, New Jersey courts have routinely held that "the 'function of the court is to enforce the [agreement] as written, not to write for the parties a different or a better contract." *Freedman Truck Ctr. v. General Motors Corp.*, 784 F. Supp. 167, 178 (D.N.J. 1992) (internal citation omitted).  Here, to read into the Agreement a license for the ANGRY BIRDS trademark  would amount to the Court impermissibly attempting to "write for [one of] the parties a different or a better contract." *Id.*  Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, like her claims for breach of contract and trademark infringement, must be dismissed based on the plain terms of the written Agreement.

## VI.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW

A claim for unjust enrichment requires that: (1) at plaintiff's expense; (2) defendant received a benefit; (3) under circumstances that would make it unjust for defendant to retain the benefit without paying for it.  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558 (HAA), 2008 WL 4126264, at *21 (D.N.J. Sept. 2, 2008).  "To assert a claim of unjust enrichment a plaintiff must show that 'it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" *Prima v. Darden Rests., Inc.*, 78 F. Supp. 2d 337,

DEFENDANT'S MOTION TO DISMISS- 15
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

355 (D.N.J. 2000) (citation omitted).

Plaintiff alleges that Hartz was unjustly benefited by "selling Rovio-themed 'Angry Birds' pet toys when it no longer was the owner of the 'Angry Birds' trademark for such products." (Compl. ¶ 80.)  Thus, Plaintiff's unjust enrichment claim is dependent upon the incorrect contention that the Agreement constitutes a trademark license from Plaintiff to Hartz. However, since Plaintiff never owned any rights in the ANGRY BIRDS mark, and never licensed any trademark rights under the Agreement, there is no basis for Plaintiff's unjust enrichment claim.  Any benefit reaped by Hartz pursuant to the sale of products bearing the ANGRY BIRDS trademark did not violate any Agreement between Plaintiff and Hartz, nor unjustly enrich Hartz beyond its contractual rights.  Accordingly, Plaintiff's unjust enrichment claim fails as a matter of law.

## VII.    PLAINTIFF IS NOT ENTITLED TO A DECLARATORY JUDGMENT

Plaintiff "seeks a declaration from the Court confirming that the Intellectual Property and the 'Angry Birds' trademark utilized by Hartz are her exclusive property and that Hartz should have returned and released all rights to Plaintiff after the Agreement expired in 2012." (Compl. ¶ 92.)  This claim should be dismissed because it seeks relief beyond the scope of the Declaratory Judgment Act, and because the substantive claims on which it is based fail as a matter of law.

"The granting of a declaratory judgment is discretionary and not mandatory." *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974).  "Declaratory judgments are meant to define the legal rights and obligations of the parties in anticipation of some future conduct[,]" not "to proclaim that one party is liable to another." *Andela v. Administrative Office of U.S. Courts*, 569 Fed. Appx. 80, 83 (3d Cir. 2014).  In *Andela*, the Third Circuit refused to grant

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

declaratory relief "[b]ecause the conduct alleged in the complaint took place in the past." *Id.*

Similarly, in *Benta v. Carroll*, 550 Fed. Appx. 103, 105 (3d Cir. 2014), the Third Circuit held

that the request for declaratory judgment was "moot," explaining that when parties are "already

engaged in litigation," they are "past the point where a declaratory judgment action can serve a

prophylactic purpose." (citing *In re 400 Walnut Assocs., L.P.*, 454 B.R. 60, 75 (Bankr. E.D. Pa.

2011); *In re Joey's Steakhouse, LLC*, 474 B.R. 167, 184 (Bankr. E.D. Pa. 2012)).

Here, Plaintiff seeks a declaration that Hartz is liable to Plaintiff for its past conduct.

Because a declaration of Hartz's alleged liability would not serve any prophylactic purpose,

this claim should be dismissed. Furthermore, the parties are already engaged in litigation on a

number of substantive claims, the adjudication of which will "perforce determine the rights of

each party." *Joey's Steakhouse*, 474 B.R. at 184. Therefore, "the request for declaratory relief

is, at this juncture, moot." *Id.*

Moreover, declaratory relief is a mere procedural device. *Aralac, Inc. v. Hat Corp. of

Am.*, 166 F.2d 286, 291 (3d Cir. 1948) ("The [Declaratory Judgment] Act created no new

rights, but introduced an additional remedy . . . for the determination of an already existing

right."). Here, as each of Plaintiff's substantive claims fails as a matter of law, her cause of

action for declaratory relief must also be dismissed.

## VIII.   PLAINTIFF'S CLAIM FOR AN ACCOUNTING CANNOT STAND

Plaintiff argues that she is entitled to an accounting of Hartz's profits. In a case alleging

trademark infringement, an accounting of profits is available only "if the defendant is unjustly

enriched, if the plaintiff has sustained damages, or if an accounting is necessary to deter

infringement." *Marshak v. Treadwell*, 595 F.3d 478, 495 (3d Cir. 2009). As set forth above,

Plaintiff is unable to demonstrate that Hartz has infringed any trademark rights, that Hartz was

DEFENDANT'S MOTION TO DISMISS- 17
NO. 2:14-CV-1174 RSL

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

unjustly enriched, or that Plaintiff sustained damages as a result of Hartz's actions.

Accordingly, Plaintiff's claim for accounting must be dismissed.

## IX.    THE AGREEMENT PROHIBITS CONSEQUENTIAL DAMAGES

Article 6.5 of the Agreement provides:

*IN NO EVENT SHALL EITHER PARTY BE LIABLE TOWARD THE OTHER PARTY OR ANY THIRD PARTY FOR LOST PROFITS, LOSS OF GOOD WILL, OR ANY SPECIAL, INDIRECT, CONSEQUENTIAL OR INCIDENTAL DAMAGES, HOWEVER CAUSED ARISING UNDER ANY THEORY OF LIABILITY.  THIS LIMITATION SHALL APPLY EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY.*

(Compl. Ex. A at Art. 6.5 (emphasis in original).)  Accordingly, to the extent Plaintiff's claims

seek such remedies, including lost profits and loss of goodwill, such request for relief must be

dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety.

DATED this 15th day of October, 2014

LANE POWELL PC

By   *s/Mark G. Beard*
     Mark G. Beard, WSBA No. 11737
     beardm@lanepowell.com
     Jennifer M. Beyerlein, WSBA No. 35754
     beyerleinj@lanepowell.com
     Carson Cooper, WSBA No. 44252
     cooperc@lanepowell.com

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

Jonathan K. Cooperman
Andrea L. Calvaruso
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178-0062
E-Mail: jcooperman@kelleydrye.com
E-Mail: acalvaruso@kelleydrye.com

*Attorneys for Defendant The Hartz Mountain Corporation*

DEFENDANT'S MOTION TO DISMISS- 19
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

1

## CERTIFICATE OF SERVICE

2

3      Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under
the laws of the State of Washington, that on the 15th day of October, 2014, the document
4      attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF
system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of
the Court will send e-mail notification of such filing to the following persons:

5

| | |
|---|---|
| Anthony D. Shapiro<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101-1244<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>E-Mail: tony@hbsslaw.com | Simon B. Paris<br>Saltz Mongeluzzi, Barrett & Bendesky, PC<br>One Liberty Place, 52nd Floor<br>1650 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 575-3985<br>E-Mail: sparis@smbb.com |
| Thomas E. Loeser<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101-1244<br>Facsimile: (206) 623-0594<br>E-Mail: toml@hbsslaw.com | Patrick Howard<br>Saltz Mongeluzzi, Barrett & Bendesky, PC<br>One Liberty Place, 52nd Floor<br>1650 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 575-3985<br>E-Mail: phoward@smbb.com |
| Daniel E. Gustafson<br>Gustafson Gluek PLLC<br>120 South 6th Street, Suite 2600<br>Minneapolis, MN 55402<br>Telephone: (612) 333-8844<br>E-Mail: dgustafson@gustafsongluek.com | Jonathan K. Cooperman *pro hac vice*<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178-0062<br>Telephone: (212) 808-7534<br>Facsimile: (212) 808-7897<br>E-Mail: jcooperman@kelleydrye.com |
| Andrea L. Calvaruso *pro hac vice*<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178-0062<br>Telephone: (212) 808-7853<br>Facsimile: (212) 808-7897<br>E-Mail: acalvaruso@kelleydrye.com | |

23      Executed on the 15th day of October, 2014, at Seattle, Washington.

24

25                                      *s/Heidi Carchano*
                                      Heidi Carchano, Legal Assistant

26

27

DEFENDANT'S MOTION TO DISMISS- 20
NO. 2:14-CV-1174 RSL

128607.0001/6187918.1