UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
JULI ADAMS,                        )
                                   )
            Plaintiff,            )  No. C14-1174RSL
                                   )
   v.                              )  ORDER DENYING IN PART
                                   )  DEFENDANT'S MOTION
THE HARTZ MOUNTAIN CORPORATION,    )  TO DISMISS
                                   )
            Defendant.            )
_____)

      This matter comes before the Court on "Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6)" (Dkt. #21). Having reviewed the parties' memoranda, the complaint, and the accompanying contract, the Court finds the following:

**I. Background**

      Plaintiff, Juli Adams, designed a line of pet toys she called "Angry Birds," for Defendant, The Hartz Mountain Corporation. On November 20, 2006, the parties entered into a Confidential Exclusive License Agreement ("Agreement") for a five year term. The Agreement provided that Plaintiff "hereby licenses to Hartz on an exclusive basis . . . the Intellectual Property for the purpose of the use, manufacture, packaging, promotion, advertising,

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS                     1

merchandising and sale of the Licensed Products." Agreement (Dkt. #1-1) ¶ 2.1. As part of its "Key Responsibilities," Defendant agreed that it would, "at its discretion and cost, maintain, renew and protect any filings for the Intellectual Property as it relates to the Licensed Products." Agreement ¶ 3.2. "Each party acknowledge[d] that no transfer of ownership or a license to any intellectual property is contemplated by this Agreement, except as expressly provided herein." Agreement ¶ 8. However, the Agreement did provide that "Hartz shall have the right to file copyright and other intellectual property right filings, in its discretion, for all of the Licensed Products." Agreement ¶ 8. "Upon termination of [the] Agreement, all Intellectual Property shall remain the sole property of Juli Adams, and all intellectual property of Hartz shall remain the sole property of Hartz." Agreement ¶ 5.4.

On March 28, 2007, Defendant filed a U.S. federal trademark registration for "Angry Birds." On November 17, 2011, without Plaintiff's knowledge, Defendant announced it was launching a line of "Angry Birds pet toys" featuring characters from Rovio Entertainment Ltd.'s popular "Angry Birds" video game. Plaintiff received no royalties from the sale of these toys during the term of the Agreement. The parties' Agreement ended in 2012. Defendant continued to use the trademark "Angry Birds" with its Rovio pet toys, and re-registered the "Angry Birds" trademark in Defendant's name on July 18, 2014. Plaintiff asserts that Defendant has made millions of dollars from the sale of Rovio "Angry Birds" pet toys.

Plaintiff brought eight claims based on Defendant's use of the trademark "Angry Birds." Plaintiff asserts that the license of her "Intellectual Property" included "Angry Birds," and that Defendant's use of that trademark after the termination of the Agreement and for its Rovio products is unlawful. Defendant moved to dismiss the entire action, arguing that the "Intellectual Property" licensed in the Agreement did not include "Angry Birds," and that Defendant is the proper owner of the trademark and therefore free to use it.

**II. Standard of Review**

A 12(b)(6) motion seeks dismissal for "failure to state a claim upon which relief can be

granted." Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss, the Court must take all factual allegations in a well-pled complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Court need not accept legal conclusions. *Id.* To survive a motion to dismiss, the presumed-to-be-true factual allegations "must be enough to raise the right to relief above the speculative level." *Id.* In addition to the pleadings, the Court may consider material which was properly submitted as part of the complaint. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

**III. "Angry Birds" Could Reasonably Be Considered Plaintiff's Intellectual Property**

The success of Defendant's motion depends almost entirely on the Court finding that Plaintiff did not have an actionable interest in "Angry Birds" in 2006 such that it was not part of the Intellectual Property that she licensed to Defendant. However, the Court concludes that Plaintiff has alleged facts raising a plausible inference that "Angry Birds" was Plaintiff's Intellectual Property licensed to Defendant as part of the Agreement.

The Agreement provides that Plaintiff "hereby licenses to [Defendant] on an exclusive basis . . . the Intellectual Property." Agreement ¶ 2.1. The Agreement defines "Intellectual Property" to mean:

> all Intellectual property of [Plaintiff] licensed under this Agreement Including (a) the Intellectual property attached hereto as *Appendix B* and (b) such future intellectual property of Julie Adams as Hartz shall request from time to time, which additional intellectual property shall be added to this Agreement upon notice by Hartz to Juli Adams and pursuant to an amendment to this Agreement . . . .

Agreement, App. A ¶ 1.8. Appendix B, titled "Intellectual Property," contains 37 drawings, some with labels and phrases, depicting the angry animals and birds. Agreement, App. B. Interpretation of the Agreement is governed by New Jersey law. Agreement ¶ 10.14.

Questions of contract interpretation are matters of law to be decided by the Court. *See Kieffer v. Best Buy*, 14 A.3d 737, 742 (N.J. 2011). "A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner." *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009). The Court "must discern and implement the

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS

3

common intention of the parties." *Pacifico v. Pacifico*, 920 A.2d 73, 77 (N.J. 2007). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" *Id.* "The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." *Kieffer*, 14 A.3d at 743. Therefore, the Court "should give contractual terms 'their plain and ordinary meaning,' unless specialized language is used peculiar to a particular trade, profession, or industry." *Id.* (citations omitted).

In the present case, there are two crucial terms in the Agreement's definition of "Intellectual Property": "Intellectual property" and "Including." The Court will address each in turn.

*A. "Intellectual property"*

Plaintiff alleges that the phrase "Angry Birds" was part of the Intellectual Property which she licensed to Defendant. Compl. ¶¶ 5, 28 (Dkt. #1). Defendant contends that the Intellectual Property was limited to only those paintings contained in Appendix B and did not include "Angry Birds." *See, e.g.*, Def.'s Mot. to Dismiss 1–2. Because the definition of "Intellectual Property" is "all *Intellectual property* of [Plaintiff]," this Court must determine if "Angry Birds" was Plaintiff's "Intellectual property" at the time the Agreement was signed, and was thus part of the licensed material.

The ordinary legal meaning of "intellectual property" is "[a] commercially valuable product of the human intellect, in a concrete or abstract form, such as a copyrightable work, a protectable trademark, a patentable invention, or a trade secret." *Black's Law Dictionary* 881 (9th ed. 2009). This definition indicates that if a commercially valuable product is protectable, then it is intellectual property. The Supreme Court has stated that § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), the provision under which Plaintiff brings her trademark claims, "protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act [15 U.S.C. § 1052] are for the most part applicable in

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS
4

determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "In order to be registered, a mark must be capable of distinguishing the applicant's goods from those of others. [15 U.S.C.] § 1052. Marks are often classified in categories of generally increasing distinctiveness . . . they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id.* Marks which are suggestive, arbitrary, or fanciful are "inherently distinctive" and protectable "because their intrinsic nature serves to identify a particular source of a product . . . . In contrast, generic marks—those that 'refe[r] to the genus of which the particular product is a species,' are not registerable as trademarks." *Id.* (citations omitted). Given that the mark "Angry Birds" was trademarked, compl. ¶ 33, it is apparent that the mark was protectable.

Under common law, a protectable ownership interest in an unregistered trademark is established if the mark has been used in commerce. *See Dep't of Parks & Recreation for Cal. v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1125 (9th Cir. 2006). To establish actual commercial use a party must show (1) that it actually adopted and used the mark in commerce before the mark was registered and used by another party, and (2) use of the mark was continuous. *Id.* at 1125–26. A single instance of commercial use can be sufficient, so long as the use "demonstrate[s] both adoption of the mark[] and use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as [that] of the adopter of the mark." *Id.* at 126 (internal quotations omitted). In the present case, Plaintiff has alleged facts sufficient to raise a plausible inference that she had a protectable ownership interest in the mark because she did use it in commerce when she licensed it, along with her designs, to Defendant. Compl. ¶ 3, 26–28, 98, 109.

Because "Angry Birds" was protectable, Plaintiff has alleged sufficient facts showing that "Angry Birds" was Plaintiff's "Intellectual property."

### B. "Including"

Plaintiff alleges that the definition of "Intellectual Property" includes both the drawings

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS                                                                 5

in Appendix B as well as "Angry Birds."  Compl. ¶ 26–28; *see also* Pl.'s Opp'n to Mot. to Dismiss 2–3, 6 (Dkt. #25).  Defendant asserts that the license only covered the drawings in Appendix B.  Def.'s Mot. to Dismiss 7 (arguing that because Appendix B did not reference the trademark "Angry Birds" or any other trademark, and because the parties did not amend the license to include the trademark "Angry Birds," "the Intellectual Property licensed under the Agreement is clearly confined to the illustrations contained in Appendix B to the Agreement").

The ordinary meaning of "include" is "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate" or "to take in, enfold, or comprise as a discrete or subordinate part or item of a larger aggregate, group, or principle." *Webster's Third New International Dictionary* 1143 (Philip Babcock Gove et al. eds., 1981).  This definition makes it clear that the term "Including" does not mean that *only* the drawings in Appendix B could be part of the Intellectual Property.  Rather, those drawings were just a part of what could be Plaintiff's Intellectual Property.  Plaintiff has alleged facts raising a plausible inference that "Angry Birds" was part of the "Intellectual Property" licensed to Defendant.

**IV.  Plaintiff's Claims**

*A. Breach of Contract (Counts I and II), Unjust Enrichment (Count III), False Designation of Origin, 15 U.S.C. § 1125 (Counts VI and VII), and Accounting (Count VIII)*

Defendant's arguments for dismissal of Plaintiff's breach of contract, infringement, unjust enrichment, and accounting claims rely on the central premise that "Angry Birds" was not part of the Intellectual Property Plaintiff licensed to Defendant.  Because this Court finds that, for the purposes of this motion to dismiss, Plaintiff has alleged facts sufficient to raise a plausible inference that she owned "Angry Birds" and licensed—but never sold (compl. ¶ 67)—it to Defendant, Defendant's arguments on these claims fail.

Because Defendant primarily relies on a central premise that this Court does not find persuasive, the Court need not address each of Defendant's arguments separately.  However, Defendant does make the argument that if the Court finds "that the Agreement included a

trademark license of ANGRY BIRDS from Plaintiff to Hartz, it was void *ab initio* for failure to include necessary quality control provisions." Def.'s Mot. to Dismiss 13. The Court finds this argument unpersuasive for two reasons. First, under Ninth Circuit law, although a licensor has a duty to control and supervise a licensee's use of a trademark, a license agreement need not contain an express quality control provision to be valid license. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 992 (9th Cir. 2006). Second, even utilizing Defendant's cited case, failure to provide a quality control provision does not necessarily constitute naked licensing, which could lead to abandonment. *See Doeblers' Penn. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 823 (3d Cir. 2006) ("Failure to provide quality control *may* constitute naked licensing, leading to abandonment of the mark." (emphasis added)). Furthermore, the burden to establish a naked licensing claim is very high. *Id.* (citing, among other cases, *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1059 (9th Cir. 1976)). In the present case, Plaintiff survives a motion to dismiss because she has alleged that she in fact exercised sufficient supervision and quality control over the Intellectual Property. *See* Compl. ¶ 20 (Plaintiff reviewed mock-ups of the toys and discussed the line with Defendant).

## B. Conversion (Count IV)

Plaintiff alleges that Defendant "willfully interfered with and converted, without lawful justification, Plaintiff Adams' ownership of the "Angry Birds" trademark by failing to assign the mark to Plaintiff when the Agreement . . . expired." Compl. ¶ 86. Plaintiff asserts that Washington law governs the conversion claim. Pl.'s Opp'n to Mot. to Dismiss 13 (Dkt. #25). She argues that the choice of law provision in the Agreement does not apply to conversion because that claim "is entirely predicated upon [Defendant's] theft of [Plaintiff's] 'Angry Birds' mark *after the Agreement ended*." *Id.* Defendant argues that New Jersey law governs and that under the law of that state the conversion claim must be dismissed. Def.'s Mot. to Dismiss 14; Def.'s Reply in Supp. of Mot. to Dismiss 8 (Dkt. #28). The choice of law provision states that, except for law governing conflicts of law, New Jersey law governs the "validity, Interpretation

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS

7

and performance" of the Agreement.  Agreement ¶ 10.14.

The Court finds New Jersey law governs the conversion claim because Defendant's alleged failure to assign the trademark "Angry Birds" back to Plaintiff upon the termination of the Agreement relates to the "performance" of the Agreement.  The Agreement states in relevant part:  "Upon termination of this Agreement, all Intellectual Property shall remain the sole property of Julie Adams, and all intellectual property of Hartz shall remain the sole property of Hartz."  Agreement ¶ 5.4.  Defendant's failure to assign the mark—which for the purposes of this motion the Court assumes was trademarked for Plaintiff's benefit as part of its "Key Responsibilities" (*see* Compl. ¶ 33; Agreement ¶ 3.2)—affects its performance of this provision.  New Jersey law therefore governs the conversion claim.

The Court reaches the same conclusion under a formal Washington conflict of laws analysis.  *See Griffin v. McCoach*, 313 U.S. 498, 503 (1941) ("federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit").  First, there is an actual conflict of law.  *See Erwin v. Cotter Health Ctrs.*, 161 Wn.2d 676, 692 (2007) (there must be an actual conflict of laws or interests before the court will undertake a conflict of laws analysis).  Under New Jersey law, intangible property cannot be the subject of a conversion claim.  *See, e.g.*, *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13-1895 (SRC), 2013 WL 3508835, at *8 (D.N.J. Jul 11, 2013) (dismissing claim for conversion of confidential information); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (noting that "courts in this District[] have held that intangible property cannot be the subject of a conversion claim" and dismissing a claim for conversion of customer transaction data); *AccuZIP, Inc. v. Dir., Div. of Taxation*, 25 N.J. Tax 158, 169 (N.J. Tax Ct. 2009) (identifying intangible personal property as  trademarks, service marks, and trade names).  Under Washington law, it can.  *See Lang v. Hougan*, 136 Wn. App. 708, 718 (2007) (both tangible and intangible property can be the basis of a conversion claim).

Washington courts "interpret contract provisions to render them enforceable whenever

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS

8

possible.  Further, [Washington courts] generally enforce contract choice of law provisions." *Schnall v. AT & T Wireless Services, Inc.*, 171 Wn.2d 260, 266 (2011) (citations and internal quotations omitted).  Washington has adopted section 187 of the Restatement (Second) Conflict of Laws (1971) to resolve conflicts of laws where the parties have made a contractual choice of law.  *Erwin*, 161 Wn.2d at 694.  The Restatement provides that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  Ownership of the trademark is an issue that the parties could have resolved with an explicit provision.  Restatement (Second) Conflict of Laws § 187(1) (1971).  Thus, under Washington's conflict of law analysis, the Court examines this claim under New Jersey law.

Under New Jersey law, the conversion claim must be dismissed because intangible property—like trademarks—cannot be the subject of a conversion claim.  *See, e.g.*, *StrikeForce Technologies, Inc.*, 2013 WL 3508835, at *8; *Slim CD, Inc.*, 2007 WL 2459349, at *12; *AccuZIP, Inc.*, 25 N.J. Tax. at 169.

### C. Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. *(Count V)*

Plaintiff seeks a declaratory judgment from this Court that the "Angry Birds" trademark is her exclusive property.  Compl. ¶ 92.  Defendant argues that this claim must be denied because under Third Circuit precedent, a request for declaratory judgment is inappropriate where it would not serve a prophylactic purpose.  Def.'s Mot. to Dismiss 20–21.  However, Defendant cites no authority for the proposition that this Court is bound to follow Third Circuit precedent.

This Court can find no Ninth Circuit case declaring that a declaratory judgment claim must be dismissed once the parties are embroiled in litigation.  All that the Declaratory Judgment Act requires is that there be an actual case or controversy and that the Court have jurisdiction.  28 U.S.C. § 2201(a).  In the present case, there is an actual controversy, and the Court has diversity jurisdiction.  Accordingly, Plaintiff has alleged sufficient facts to support a claim for declaratory relief.

*D. Consequential Damages*

Defendant argues that, "to the extent Plaintiff's claims seek [damages prohibited by ¶ 6.5 of the Agreement], including lost profits and loss of good will, such request for relief must be dismissed." Def.'s Mot. to Dismiss 18.  As Plaintiff did not specify the type of damages she is seeking, this Court declines to address this issue at this time.

**IV. Conclusion**

For all of the foregoing reasons, "Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6)" (Dkt. #21) is DENIED as to Plaintiff's claims for breach of contract, unjust enrichment, declaratory judgment, false designation of origin, and accounting (counts I–III and V–VIII), and GRANTED as to Plaintiff's claim for conversion (count IV).

Dated this 15th day of December, 2014.

*signature*
Robert S. Lasnik
United States District Court Judge

ORDER DENYING IN PART
DEFENDANT'S MOTION
TO DISMISS

10