THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULI ADAMS,<br><br>               Plaintiff,<br><br>   v.<br><br>THE HARTZ MOUNTAIN CORPORATION,<br><br>               Defendant. | Case No. 2:14-cv-1174 RSL<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 30, 2015** |

DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

### A.     PLAINTIFF CANNOT PROVE SHE OWNS THE ANGRY BIRDS MARK

The primary issue in this case is whether the "Intellectual Property" Adams *owned and licensed under the Agreement* included the trademark ANGRY BIRDS.  While Plaintiff repeatedly states that that she intended to retain ownership of all her "intellectual property," she provides no evidence in support of her claim of ownership of the trademark.

i. <u>Adams Did Not Make Use of the Mark Required to Establish Trademark Rights</u>

Plaintiff provides no evidence that she made use of the ANGRY BIRDS mark in connection with the promotion or sale of any products prior to execution of the Agreement.  In fact, Plaintiff herself admitted that she never used the mark at all prior to her Agreement with Hartz. (Calv. Decl.[1], Ex. D at 121 [Pl. Dep. 202:14-204:3].)  She does not contest that trademark rights are dependent upon use of the mark in conjunction with the sale of goods. (Mem. at 10.)  Therefore, there is no question that she did not own any rights in the trademark "at the time the Agreement was signed," as the Court previously noted is necessary to prove her claims.  (Calv. Decl., Ex. C at 110.)  If Plaintiff did not own the mark at the time she entered into the Agreement, she necessarily could not license the mark to Hartz as part of that Agreement.  *See generally* Thomas McCarthy, 2 McCarthy on Trademarks and Unfair Competition § 16:11 (4th ed. 2014). Merely "coining a term" does not confer any trademark rights.  *Id.*  Therefore, even if it were true that Ms. Adams first thought of the name ANGRY BIRDS (Opp. at 7), absent her prior use of the mark in commerce, or the parties' intent to license the mark under the Agreement, her "idea" alone does not give rise to trademark rights.

ii. <u>There is No Proof The Parties Intended to License the ANGRY BIRDS Mark</u>

Plaintiff also has not provided any evidence which demonstrates the parties mutually intended the "Intellectual Property" licensed from Adams to Hartz under the Agreement would include the ANGRY BIRDS trademark.  Moreover, Plaintiff's statement that the Court has

---

[1] "Calv. Decl." refers to the Declaration of Andrea L. Calvaruso in Support of Defendant's Motion for Summary Judgment, dated October 6, 2015.

1

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

accepted her definition[2] of "Intellectual Property" in the parties' Agreement "as a matter of law" is incorrect. (Opp. at 16-18.) The Court found only that the facts as plead were enough to raise a "plausible inference" that Plaintiff owned the "Angry Birds" mark (Calv. Decl., Ex. C at 116), and allowed discovery to proceed prior to a determination of what intellectual property Adams owned at the time the parties executed the Agreement. (Mem. at 6.) Plaintiff has now presented no evidence necessary to support such a "plausible inference" of ownership.[3]

a. No Documents Support Adams' Ownership of the Mark

The documents in the record demonstrate that the parties never contemplated Adams' ownership or licensing of the ANGRY BIRDS trademark. (Mem. at 16-18.) Even Plaintiff's own detailed notes regarding drafts of the Agreement and her lawyer's own redlines of drafts of the Agreement he sent to Hartz do not mention the ANGRY BIRDS trademark.

Plaintiff cites to only *two* documents that predate the execution of the Agreement, neither of which even include the phrase "Angry Birds." (Opp. at 7-8.) The first is an excerpt from a price quote by a Chinese manufacturer for an initial 3 dimensional depiction of certain of Adams' bird illustrations. (Opp. at 7; Shap. Decl., Ex. 6.) That document refers to the collection of prototypes as "Mad Birds" and neither includes the trademark ANGRY BIRDS nor any packaging prototypes. Indeed, the undisputed evidence is that the trademark for the product line and the packaging was not created or chosen until much later. (Shap. Decl., Ex. 1

---

[2] Plaintiff admits that the ANGRY BIRDS trademark is not identified in the License Agreement (Calv. Decl., Ex. X at 399; Ex. D at 121 [Pl. Dep. 264:22-23]), she nevertheless argues that the contractual definition of "Intellectual Property" is entirely unbounded and covers anything that was in Plaintiffs' portfolio at the time of the License Agreement, and anything she created or conceived of thereafter. (Opp. at 10-11, 17-18.) Under Plaintiff's theory, any phrase mentioned by Plaintiff to Hartz during the five year term was "owned" by Plaintiff and subject to the License Agreement despite no mention in the Agreement or an amendment. This is contrary to the basic tenets of contract interpretation because it renders meaningless the definition of "Intellectual Property" in Appendix A to the Agreement. 11 Williston on Contracts § 32:11 (4th ed.).

[3] Plaintiffs' suggestion that Hartz is responsible for destruction of data is misplaced and unfounded. Hartz *reviewed* over 32,000 documents based on agreed-upon search terms and produced approximately 12,000 pages of documents. During the course of discovery Plaintiff made no discovery motions asserting that Hartz was anything less than forthcoming with documents and certainly made no motion asserting spoliation. Moreover, any communications with Plaintiff concerning the Licensing Agreement would also have been contained in her files, which were complete enough to contain handwritten notes and diary entries about the transaction.

2

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

[Pl. Dep. at 181:5-18; 190:23-191:13]; Calv. Supp. Decl.[4], Ex. 4 at 17-20.) Second, Plaintiff cites an email dated November 8, 2006 which also makes no mention of the ANGRY BIRDS trademark or packaging. It merely refers to the products as "cat toys" and a "new toy line." (Opp. at 8; Shap. Decl., Ex. 7.)

### b. No Testimony Cited by Plaintiff Supports Her Claim of Ownership

Plaintiff's deposition testimony and an unsupported declaration from her former live-in boyfriend neither support her position nor contradict the documents cited by Hartz.[5] (Mem. at 6-13.) Mr. Ripley carefully declares only that Plaintiff "came up with the *idea/concept* of 'Angry Birds' and the individual drawings that represent the line." (Shap. Decl., Ex. 2 at ¶ 5.) He also states that *he understood* Adams was "providing the entire *concept* of the Angry Birds toys" to Hartz. (Shap. Dec., Ex. 2 at ¶ 6.) Even if true, the "concept" does not legally equate to rights in the ANGRY BIRDS trademark. (Mem. at 10.) Mr. Ripley repeatedly conflates "concept" with "trademark" by, for example, referring to the "Angry Birds line of products." A general concept or idea alone is not protectable intellectual property. *Rolley*, 204 F.2d at 212. Nor does the language of the Agreement make any mention of licensing a "concept."

Mr. Ripley's carefully worded declaration also unbelievably alleges that he remembers *word for word* a particular phone conversation he had with Hartz's in house attorney over nine years ago in which he purportedly stated that if Hartz wanted to use "any of it" [Adams' intellectual property] after the term of the Agreement, Hartz would have to pay Adams. (Shap. Decl., Ex. 2 at ¶ 15.) Mr. Ripley does not state anywhere in his declaration that *he ever told*

---

[4] "Calv. Supp. Decl." refers to the Declaration of Andrea L. Calvaruso in Further Support of Hartz's Motion for Summary Judgment, dated October 30, 2015, filed herewith.

[5] Plaintiff attempts to undermine the clear language of Article 8 and Amendment One of the Agreement, which both clearly state Hartz would own any trademarks and related filings, by suggesting there is something untoward about Hartz seeking Adams' written consent to registration of the trademark THE JULI ADAMS COLLECTION after filing the application with the U.S. Patent and Trademark Office ("USPTO"). In fact, the written consent was obtained to comply with a request from the trademark examiner after the filing, as is required by Section 813 of the USPTO Trademark Manual of Examining Procedure (*available at* http://tbmp.uspto.gov/RDMS/detail/manual/TBMP/current/tbmpd1e2.xml). Importantly, as Plaintiff admits that Amendment One merely confirmed the rights Hartz already had to file for trademark applications in its own name, Plaintiff's highlighting the timing of such an amendment is a red herring.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

3

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

*Mr. Marx* he believed Adams owned or was licensing the ANGRY BIRDS to Hartz.[6] Nor does he claim that the parties ever specifically discussed the ANGRY BIRDS trademark during the drafting of the Agreement.[7]

Plaintiff's claims that the trademark and packaging design were "completed" before the Agreement was signed is based solely upon Mr. Ripley's unsupported declaration. (Opp. at 10, 19, 21.) This allegation is belied by the objective evidence. (Shap. Decl., Ex. 1 [Pl. Dep. at 181:5-18; 190:23-191:13]; Calv. Supp. Decl., Ex. 4 at 17-20.) Plaintiff's suggestion that the provision of a UPC code in November 2006 proves the trademark and packaging were finalized at that time (Opp. at 8) is also unsupported. No witness testified that the assignment of a UPC code indicates the trademark and packaging was "complete" or final. Mr. Yacovino testified that a January 31, 2007 email among Hartz's marketing team indicated that the Licensed Products were still in prototypes and that a trademark and packaging for the Juli Adams toys had not yet been selected. (Calv. Supp. Decl., Ex. 3 at 14; Shapiro Decl., Ex. 4 [Yacovino Dep. 82:11-84:14].)

The absence of any mention of the ANGRY BIRDS trademark in the Agreement underscores that the parties had no intention to include it as licensed Intellectual Property. Mr. Ripley's declaration is contradicted by the contemporaneous documents that he was sending to Hartz at the time of the negotiations. Had Plaintiff and Mr. Ripley been concerned about her ownership of the mark "Angry Birds" (Shapiro Decl., Ex. 2 at ¶¶ 8, 19), it would have been

---

[6] Mr. Marx understandably also could not recall any specific conversations regarding the ANGRY BIRDS trademark during the negotiation of the Agreement as it was "a long time ago." (Shap. Decl., Ex. 9 [Marx 81:17-24; 271:12-19].) However, Mr. Marx clearly testified that if either Ford, Adams, her attorney or anyone else ever told him that the parties' intentions were that Ms. Adams would own the mark, he would have specifically included it in Appendix B to the Agreement. (Calv. Decl., Ex. J at 251 [Marx Dep. 244:2-245:10].) Plaintiff's attempt to discredit Mr. Marx's clear testimony by suggesting he was untruthful to avoid a "malpractice" claim (Opp. at 20 n.137) is completely unfounded and is nothing more than a desperate attempt to avoid the clear record on the issue.

[7] Plaintiff's statement that "the various drafts of the Agreement did not specifically reference any of Juli's toys" (Opp. at 10) is deliberately misleading. The Agreement licensed artwork for pet products and Appendix B included 37 pages of artwork that correspond to the design of the Licensed Products. (Calv. Decl., Ex. A at 43-80.)

4

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1  included or mentioned in the drafts and discussions.

2  When read in context, Mr. Ford's testimony also does not support Adams' interpretation
3  of the Agreement. Mr. Ford admitted that the Agreement "should" provide that any Intellectual
4  Property not stated in the Agreement must be added by amendment. (Shap. Decl., Ex. 3 [Ford
5  Dep. 235:18-19; 504:16-18].) He also admitted that at the time he gave the testimony cited in
6  Plaintiff's brief at p. 11, he had not seen the Agreement in over eight years and that he *did not*
7  *know one way or the other* whether the Agreement included the ANGRY BIRDS trademark
8  (Shap. Decl., Ex. 4 [Ford Dep. 242:25-243:13].) After he had reviewed the Agreement, he
9  "clarified" that the parties' intention was that any additional Intellectual Property would be
10 added "as the parties agree in such amendment." (Shap. Decl., Ex. 3 [Ford Dep. 480:12-
11 481:10].) Mr. Ford further clarified that "as more products were made, as more things were
12 done, there should have been addendums" and that he was not aware any addendums or
13 amendments that included the ANGRY BIRDS mark. (Shap. Decl., Ex. 3 [Ford Dep. 235:11-
14 22; 504:16-505:5].) He also later confirmed that any intellectual property not included in the
15 Agreement must be added by amendment. Shap. Decl., Ex. 4 [Ford Dep. 507:25-508:13].)

16 Plaintiff also misrepresents the testimony of Mr. Yacovino and Mr. Marx. Mr.
17 Yacovino did <u>not</u> testify that Hartz intended to "'leverage' *all* of Juli's work." (Opp. at 18.)
18 The cited testimony only mentions that Hartz may have been considering having Ms. Adams
19 attend a trade show to promote the products. (Shap. Decl., Ex. 4 [Yacovino Dep. 84:7-29].)
20 Similarly, Mr. Marx did not testify that it was "Hartz' practice to file the trademarks for the
21 products it was licensing." (Opp. at 11.) In response to a vague question, he merely testified
22 that whether Hartz made intellectual property filings in a given situation "depends" upon the
23 terms of the particular agreement. (Shap. Decl., Ex. 9 [Marx Dep. 136:18-137:10].)

24 Ms. Adams' testimony also lends no support to the allegation that the parties intended
25 to include the ANGRY BIRDS trademark as part of the licensed Intellectual Property (Opp. at
26 8.) She testified (contrary to Mr. Ripley's statements in Shap. Decl., Ex. 2 ¶ 10) that she had

5

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

no memory of discussing any contract terms with Mr. Ford or anyone else at Hartz, and remembered only that in negotiating the Agreement she intended to retain ownership of all of her "intellectual property." (Calv. Decl., Ex. D at 121 [Pl. Dep. 74:7-16; 83:19-21; 86:8-87:12; 89:21-90:1].) While prefaced with the statement that "Juli Adams' testimony could not be clearer," the alleged support cited in Plaintiff's brief for these propositions is <u>not</u> the testimony of Adams herself, but the conclusory declaration of Mr. Ripley. (Opp. at 19 n.120-21.) As late as November 2013, Plaintiff's own emails demonstrate she <u>never</u> believed she owned the mark, asking Ford, "[w]ould the name Angry Birds be my intellectual property?"[8] (Calv. Decl., Ex. Y at 401.) Her emails also admit that Appendix B included anything that would have been trademarked under the Agreement. (Calv. Decl., Ex. X.)

### B. PLAINTIFF ABANDONED ANY RIGHTS TO THE ANGRY BIRDS TRADEMARK THROUGH NON-USE

Plaintiff's claim that "the doctrine of licensee estoppel precludes Hartz from even raising the defense of abandonment" is incorrect. In *STX, Inc. v. Bauer USA, Inc*., No. C 96-1140 FMS, 1997 WL 337578, at *10 (N.D. Cal. June 5, 1997), on which Plaintiff relies, the court makes clear that "although *current* licensees are estopped from challenging the validity of a mark, . . . *former licensees may challenge the validity of the mark* if such challenge is based upon facts which arose after the license expires" (emphasis added). There is "no reason why such a licensee ought to be estopped; or why a grant of a license should *permanently* immunize a trademark holder from legal attack." *Id.* Here, Hartz had no reason to know that Plaintiff claimed ownership to the ANGRY BIRDS trademark until her lawyer sent a letter to Hartz after the Agreement had expired. Licensee estoppel is, therefore, not applicable.

Plaintiff does not contest hat between December 31, 2010 and August 4, 2014 she made no use of the ANGRY BIRDS mark via either her own sale of goods or the sale of goods by

---

[8] *See also* Mem. at 17-18; Calv. Decl., Ex. D, at 121 [Pl. Dep. 204:22-205:6; 205:9-206:4; 206:8-16; 246:1-23; 267:9-15] (Plaintiff testified that she did not even understand what Ford thought her claims might be and that she never believed Rovio should have asked her permission to use the mark).

6

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

Hartz, or any other alleged licensee. (Mem. at 19.) Plaintiff instead argues that she did not abandon the mark because "it was only one year after the Agreement's expiration—January 23, 2014—that her counsel contacted Hartz to assert her claim of ownership."[9] (Opp. at 23.) Plaintiff can point to no authority to support the misguided notion that merely alleging ownership of a mark or remaining time in a license agreement (absent any actual sales of product bearing the mark) constitutes "use" of the trademark sufficient to avoid abandonment.[10] Trademark "use" within the meaning of the Lanham Act means "the bona fide use of such mark made in the ordinary course of trade, and not merely to reserve a right in a mark." 15 U.S.C. § 1127. "[A] mark shall be deemed to be in use in commerce" when:

> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . *and*
> (B) the goods are *sold or transported in commerce*.

*Id.* (emphasis added); *see also RIPL Corp. v. Google Inc.*, No. 2:12-CV-02050-RSM, 2014 WL 1350810, at *3 (W.D. Wash. Apr. 3, 2014). Plaintiff admittedly did not sell any products "in commerce" after December 31, 2010 (either via an alleged license to Hartz or otherwise), and therefore made no "use" of the trademark.

Moreover, *abandonment may result from non-use for less than three years* when there is proof that "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1157; *RIPL Corp.*, 2014 WL 1350810, at *3. The three year period merely "eliminates the [defendant's] burden to establish the intent element of abandonment." *Sutton v. Williamsburg Winery, Ltd.*, No. 2:12-CV-00333-GEB, 2013 WL 5348127, at *3 (E.D. Cal. Sept. 23, 2013) *aff'd*, No. 13-17093, 2015 WL 5692045 (9th Cir. Sept. 29, 2015). Here, Plaintiff concedes that, aside from Hartz's alleged use of her mark, she has never used the ANGRY BIRDS mark to

---

[9] Plaintiff's claim that she was unaware that Hartz had ceased selling products in 2010 is not credible because her failure to receive royalty payments would have alerted her to this fact.
[10] Indeed, the Agreement is clear that Hartz was under no obligation to sell any Licensed Products and that it was not bound by any terms of exclusivity which prevented it from selling products with third parties during the Term of the Agreement. (Calv. Decl., Ex. A at 35, Sections 2.2, 2.3.)

7

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

sell any goods or services and that following the Agreement's expiration, she had no "plans to promote or sell any other products under the name 'Angry Birds.'" (Calv. Decl., Ex. D at 121 [Pl. Dep. 204:8-20].) Accordingly, when she commenced this Action, she had admittedly abandoned any rights she claims to have owned in the ANGRY BIRDS trademark.

### C. PLAINTIFF ABANDONED ANY RIGHTS TO THE ANGRY BIRDS MARK VIA LACK OF QUALITY CONTROL

"Quality control" refers to the practice of ensuring that goods bearing the mark are of "equal quality." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002). "The point is that customers are entitled to assume that the nature and quality of goods and services sold under the mark at all licensed outlets will be consistent and predictable." *Id.* Accordingly, quality control measures must place *enforceable* restrictions on the quality of goods that the licensee may produce or distribute under the mark. *Id.; Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010); *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc*., 448 F.3d 1118, 1132 (9th Cir. 2006) (inadequate quality control if "no recourse" to the licensee for deterioration of the quality of goods). Plaintiff neither asked about, nor was involved, in the manufacture or inspection of the Licensed Products. (Mem. at 20-23.) Nor does she profess to know anything about the measures Hartz used to ensure the quality of the products.

The only activities that Plaintiff alleges constituted quality control are: flying to Hartz's headquarters to determine if the three dimensional prototypes conformed with her vision of her two-dimensional designs and providing "lot[s] of [related] design changes"; collaborating with Hartz's marketing team with respect to character names[11]; and creating new artwork for Hartz's consideration for use on additional products. (Opp. at 24-25.) Providing ornamental design or character name suggestions does not relate to the consistency or predictability of a product's

---

[11] Plaintiff's occasional collaboration with Hartz's marketing team to brainstorm about new names for individual characters she drew (Mem. at 24-25), particularly as it is clear from the record that Hartz was no obligation to use any names Adams suggested (and often did not) (Mem. at 22), neither constitute control over the quality of the goods required for a valid trademark license, nor constitute a license of any character names.

8

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

quality, as required to establish a valid trademark license. *See Bazaar Del Mundo Inc.*, 448 F.3d at 1131-32.

Plaintiff concedes that the Agreement does not contain "an express contractual right to inspect and supervise" Hartz's operations. *Barcamerica*, 289 F.3d at 596. Instead, Plaintiff argues that the Court found "there is no control requirement when a trademark owner consents to another party's defined usage of the trademark." (Opp. at 24.) No part of this Court's opinion, however, held that a licensor may ever be excused from its obligation to inspect and supervise the licensee. Rather the Court stated that "although a licensor has a duty to control and supervise a licensee's use of a trademark, a license agreement need not contain an express quality control provision to be a valid license," so long as the licensor "in fact exercise[s] control." (Calv. Decl., Ex. C at 117.) *Miller v. Glenn Miller Prods.*, 454 F.3d 975, 992 (9th Cir. 2006). Here, Plaintiff has not shown that she, in fact, exercised any control over the quality of the goods.

Furthermore, Plaintiff's argument that "[t]here need not be formal quality control where the particular circumstances of the licensing arrangement [indicate] that the public will not be deceived" (Opp. at 24) is incorrect. In *Barcamerica*, the Ninth Circuit clarified that the "particular circumstances" that excuse formal quality control arise *only* where the licensor and licensee have a "close working relationship." 289 F.3d at 597. Plaintiff has not alleged nor provided evidence that she maintained the type of close working relationship required to establish quality control in the absence of a formal agreement. (Mem. at 20-21.)[12]

### E. HARTZ DID NOT WILLFULLY OR DELIBERATELY INFRINGE THE ANGRY BIRDS TRADEMARK

Plaintiff's allegations of willful infringement fail because they falsely assume not only that Plaintiff was the rightful owner of the mark, but that Hartz *knew or had reason to know*

---

[12] *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017-18 (9th Cir. 1985) (licensor had ten year association with licensee and was familiar with his ability and expertise); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991) (licensor and licensee enjoyed close working relationship for eight years).

9

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

that Plaintiff was the rightful owner. The evidence does not support such assumptions. The Hartz marketing team responsible for the Rovio deal all testified that it was their understanding that Hartz owned the ANGRY BIRDS trademark.[13] Plaintiff does not contest that "willful infringement" within the meaning of trademark law means the use of another's trademark with a "deliberate intent to deceive" the public by "purposely palm[ing] off the infringer's goods as those of the infringed." (Mem. at 20.) Plaintiff's only evidence of an "intent to deceive" is the testimony of Scott Yacovino that he believes there are *some* similarities between the <u>design</u> of the Rovio characters depicted in its pet toys and Plaintiff's artwork. (Opp. at 27.) Plaintiff has not made a claim that the <u>design</u> of the Rovio products infringe upon any rights in the <u>design</u> of her pet toys[14], so any similarity between the designs is irrelevant to the issue of whether the use of the ANGRY BIRDS <u>trademark</u> was intended to confuse or deceive the public. Plaintiff does not even allege that Hartz intended to deceive customers by using the ANGRY BIRDS mark to palm off its Rovio-imaged products as Plaintiff's product. Nor would Hartz have any reason to do so given the world-wide popularity of Rovio's characters.

### F.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE IT IS BASED ON SUBJECT MATTER COVERED BY THE AGREEMENT

Plaintiff does not rebut Hartz's showing that there can be no claim for unjust enrichment where an express contract governs the parties' rights. (Mem. at 23.) Neither case on which Plaintiff relies supports her position. In *Young v. Young*, 164 Wash. 2d 477, 480, 191 P.3d 1258, 1260 (2008), there was no express contract at all between the parties, and in *Hyytinen v. City of Bremerton*, 185 Wash. App. 1015, 2014 WL 7462565, at *6 (2014), there were issues of fact as to whether there existed a valid contract. Here, it is undisputed that the

---

[13] Calv. Supp. Decl., Ex. 1 at 4 [Briller Dep. 35:17-19 ("I asked our legal team whether we owned the trademark, and I was told that we do own the trademark)]; Calv. Supp. Decl., Ex. 2 at 9[Coacher Dep. 63:14-19 ("the idea that I operated under . . . was that Hartz owned the trademark and not Juli Adams . . . . I had the knowledge that Hartz owned the trademark, and I did see that in writing")]; *see also* Calv. Decl., Ex. H at 228 [Yacovino Dep. 205:5-6 ("It was my understanding that Hartz owned the Angry Birds trademark in the pet toy category.")].)

[14] Plaintiff admitted she did not believe the ANGRY BIRDS video game infringed any of her rights. (Calv. Decl., Ex. D at 121 [Pl. Dep. 206:5-7; 207:14-18].).

10

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107

Agreement constitutes a valid, enforceable contract. Moreover, Plaintiff's contention that the Agreement does not preclude her claim because it does not contemplate Hartz's "abuse of Juli's intellectual property" is unfounded, as the entire purposes of the Agreement is to set forth Hartz's rights and obligations with respect to Plaintiff's intellectual property. That Plaintiff seeks a remedy not specified by the Agreement (Hartz's profits on sales of the Rovio products) does not change the fact that her underlying claim is based on subject matter covered by the Agreement, and on the same facts that underlie her breach of contract claim.[15]

### G. PLAINTIFF CANNOT RECOVER HARTZ'S PROFITS AS A MATTER OF LAW

Plaintiff does not address the Ninth Circuit case law establishing that she must prove Hartz *willfully* infringed her trademark with an *intent to cause consumer confusion* as to the source of Hartz's products, in order to receive Hartz's profits. (Mem. at 24.) There is no evidence that Hartz sold its Rovio ANGRY BIRDS products with an intent to confuse consumers into believing that the Rovio products were associated with Plaintiff, her intellectual property, or the products Hartz created pursuant to the parties' Agreement. (*See* p. 10, *supra*.)

Nor does Plaintiff address the Ninth Circuit law demonstrating that her claim for Hartz's profits fails as a matter of law because she makes no attempt to demonstrate the portion of those profits that is attributable to the alleged infringement. (Mem. at 26-27.) Although the "defendant must prove all elements of costs or deductions claimed" (15 U.S.C. § 1117), it is the *plaintiff's burden* to show—in the first instance—the portion of defendant's sales that are attributable to the infringing conduct. (Mem. at 26.)

Plaintiff attempts to justify the deficiencies of Mr. Voth's report by simply claiming that "Hartz [did] not produce[] documents showing its fixed costs." (Opp. at 28.) Mr. Voth did a straight mathematical calculation. That he may have done his calculation using a document

---

[15] Moreover, Plaintiff's claim for unjust enrichment necessarily rests upon a finding that Hartz willfully infringed the ANGRY BIRDS trademark. As set forth above, Plaintiff cannot make this showing.

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

11

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

with Hartz's projected rather than actual profits does not change the fact that Mr. Voth completely failed to account for any of the numerous factors that he concedes contributed to sales of the Rovio-themed toys – *i.e*., the world-wide popularity of the Angry Birds video game and Hartz's own sales expertise. (Mem. at 26-27.)

Equally without merit is Plaintiff's reliance on *Hamilton-Brown Shoes Co. v. Wolf Bros. & Co*., 240 U.S. 251, 260-61 (1916), for the proposition that the Supreme Court has "reject[ed] the apportionment of profits in trademark litigation" in favor of awarding the trademark owner *all* profits resulting from the use of the trademark. (Opp. at 28.) The Supreme Court in that case: (i) restricted the award to those profits "accrued after the commencement of the suit," once the defendant had notice of the plaintiff's alleged rights; and (ii) excluded all sales where the infringing mark was accompanied by any other matter clearly indicating that the goods were manufactured by the defendant, and not the plaintiff. *Id*. at 260. Here, the use of the admittedly famous Rovio ANGRY BIRDS video game characters in connection with the Rovio ANGRY BIRDS pet toys clearly would dispel any possible confusion that the products were associated with Plaintiff or the pet products based on her artwork. Moreover, the *Hamilton-Brown* Court's decision not to further apportion the profits was based on a finding that it was "impossible to decide how much of the profit resulted from the intrinsic value of the commodity in the mark, and how much from the credit given to it by the trademark." *Id.* at 261-62. Here, Plaintiff does not claim that an apportionment of Hartz's profits would be impossible. As such, Plaintiff's claim for Hartz's profits fails as a matter of law.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss all of Plaintiff's claims with prejudice.

12

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

LANE POWELL PC

By  */s/ Carson Cooper*
    Jennifer Beyerlein, WSBA No. 35754
    beyerleinj@lanepowell.com
    Mark G. Beard, WSBA No. 11737
    beardm@lanepowell.com
    Carson Cooper, WSBA No. 44252
    cooperc@lanepowell.com

    Jonathan K. Cooperman
    Andrea L. Calvaruso
    Kelley Drye & Warren LLP
    101 Park Avenue
    New York, NY 10178-0062
    E-Mail: jcooperman@kelleydrye.com
    E-Mail: acalvaruso@kelleydrye.com

*Attorneys for Defendant The Hartz Mountain Corporation*

13

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

# CERTIFICATE OF SERVICE

Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States, that on the 30th day of October, 2015, the document attached hereto was presented to the Clerk of the Court for filing and uploading to the CM/ECF system. In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following persons:

| | |
|---|---|
| Anthony D. Shapiro<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101-1244<br>Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594<br>E-Mail: tony@hbsslaw.com | Simon B. Paris<br>Saltz Mongeluzzi, Barrett & Bendesky, PC<br>One Liberty Place, 52nd Floor<br>1650 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 575-3985<br>E-Mail: sparis@smbb.com |
| Thomas E. Loeser<br>Hagens Berman Sobol Shapiro LLP<br>1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101-1244<br>Facsimile: (206) 623-0594<br>E-Mail: toml@hbsslaw.com | Patrick Howard<br>Saltz Mongeluzzi, Barrett & Bendesky, PC<br>One Liberty Place, 52nd Floor<br>1650 Market Street<br>Philadelphia, PA 19103<br>Telephone: (215) 575-3985<br>E-Mail: phoward@smbb.com |
| Daniel E. Gustafson<br>Gustafson Gluek PLLC<br>120 South 6th Street, Suite 2600<br>Minneapolis, MN 55402<br>Telephone: (612) 333-8844<br>E-Mail: dgustafson@gustafsongluek.com | Jonathan K. Cooperman *pro hac vice*<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178-0062<br>Telephone: (212) 808-7534<br>Facsimile: (212) 808-7897<br>E-Mail: jcooperman@kelleydrye.com |
| Andrea L. Calvaruso *pro hac vice*<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178-0062<br>Telephone: (212) 808-7853<br>Facsimile: (212) 808-7897<br>E-Mail: acalvaruso@kelleydrye.com | |

Executed on the 30th day of October, 2015, at Seattle, Washington.

*/s/ Carson Cooper*

Carson Cooper

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000  FAX: 206.223.7107